Argued October 13; reversed November 2; rehearing denied
December 14, 1943

## NATION *v.* GUEFFROY
(142 P. (2d) 688, 144 P. (2d) 796)

Before BELT, Acting Chief Justice, and ROSSMAN, LUSK, BRAND and HAY, Associate Justices.

*Custer E. Ross,* of Salem (Frank S. Senn, of Portland, Ross & Lewelling, of Salem, and Senn & Recken, of Portland, on the brief) for appellant.

*Robin D. Day,* of Salem, for respondent.

BELT, Acting Chief Justice: This is an action to recover damages resulting from the alleged negligence

of the defendant Dr. H. A. Gueffroy, a physician and surgeon. From a judgment of $5,000 based upon the verdict of a jury, the defendant appeals.

■ The sole question is whether there is any substantial evidence to support the verdict. In reviewing the refusal of the court to allow the defendant's motions for a nonsuit and a directed verdict, the statement of the facts of the case must be made in the light most favorable to the plaintiff.

Defendant is a physician and surgeon who has practiced his profession in the city of Salem since 1925. During the past two years he has been serving as resident examiner for the selective service board in Marion county, Oregon. Plaintiff, pursuant to notice of the local draft board, called at the office of the defendant on Saturday afternoon, June 5, 1942, for the purpose of a physical examination. Dr. Gueffroy, who had not seen the plaintiff prior to such time, proceeded to examine him to determine whether he was suitable material for service in the armed forces of the United States. Plaintiff told defendant about an injury to his hip which he had sustained by falling on the ice thirty years ago when he was only eight years old. Dr. Gueffroy, according to the testimony of the plaintiff, had him undress and turn around front and rear, stand on one leg and raise the other up "* * * to see how my leg acted under the weight of my body." Plaintiff testified, "I showed him when I lifted it, how high I could raise it," but said nothing to the physician about being unable to stoop over. It is fair to assume from the evidence that defendant, in a general way, knew that plaintiff's hip was injured and that there was restricted motion of the right leg, it being about two inches shorter than the other leg. Dr. Gueffroy said he

observed plaintiff limping when he came into his office. He did not, however, at that time, have the advantage of the X-ray pictures which were subsequently taken of the injured hip.

Acting according to government regulations, defendant drew some blood from plaintiff's arm for a serum test. When defendant left the room to put the blood into a laboratory container and to clean the syringe, plaintiff got up from the table where he had been lying, walked over to a chair in the same room, and sat down. He was "wabbly" on his feet and "light-headed". When defendant returned, he found that plaintiff had fainted and proceeded to revive him.

It is alleged that defendant, with knowledge of the injured hip, carelessly and negligently forced plaintiff's "head and trunk forward until his head rested between his legs while plaintiff was in an unconscious state," thereby permanently injuring him by severely spraining his right hip and "breaking and tearing" the ligamentous adhesions around the same, due to prior injury. In reference to this prior injury, the plaintiff, in his complaint, alleges:

> "That during all the dates and times herein mentioned and for the past thirty years, plaintiff has had an injured right hip caused by a fall which dislocated the femoral head from the acetabulum and did not regain its normal position, and his hip became stiff and rigid."

Defendant asserts that he simply put his hand on plaintiff's head and, using only slight pressure, helped him "to maintain his position leaning forward," in order to cause compression on the abdominal vessels and thereby force blood to the brain. The undisputed testimony is that this is an approved method of reviv-

ing a patient who has fainted while in a sitting position. Plaintiff asserts, however, that such method should not have been used in view of his known physical condition.

Plaintiff testified that, after regaining consciousness, "The next thing I knew, he (Dr. Gueffroy) had his hand on the back of my neck trying to get my head between my knees and I said to him, 'You are hurting me, you can't do that' and he said, 'Well, I noticed your leg went sideways when I pushed your head down.' " Defendant testified that the pressure put on plaintiff's head had no relation whatever to his injuries, and in this conclusion he is corroborated by Dr. Fred H. Thompson, an experienced physician and surgeon, who is the only other expert medical witness who testified in the case. Dr. Thompson, who examined plaintiff in January, 1943, about seven months after the alleged occurrence of the injuries, further testified that plaintiff's condition resulted from his old injury and not from anything that the defendant did. Dr. Thompson, in response to the question as to whether such bending forward of plaintiff would cause an injury to the hip, answered that it would not and that it would take a great deal of force to break adhesions about the hip. There was no contradiction of this testimony nor was there any evidence that excessive force was used by the defendant. Dr. Thompson, interpreting the radiographs which he had taken, said the head of the femur was practically gone as it had been absorbed as a result of chronic arthritis of many years duration.

Plaintiff remained a while in the office after being revived, then walked to his automobile and went home unassisted, although complaining of great pain in his

hip. Plaintiff stayed in bed until Monday morning when he again, without crutches, went to the office of Dr. Gueffroy to secure a note from the latter to his employer in Portland explaining his absence from work. Dr. Gueffroy, in response to this request, gave to plaintiff the following note:

"Westinghouse Electric,       Portland,
    6-8-42.

"Gentlemen: The bearer H. L. Nation was at my office Saturday for a 1st Exam—for Selectees. During the process of obtaining blood for a Kahn he 'passed out' and in the subsequent maneuvers he sustained a sprain of his injured hip which accounts for his not being on the job for a few days.

H. A. Gueffroy."

The evidence tends to show that, prior to the examination in defendant's office, plaintiff was capable of doing light manual labor and walked without crutches, although at times the weight on his injured hip would cause him intense pain. After the examination, he continued to work for about one month but, according to his testimony, he was obliged to quit on account of his leg "giving out" on him.

■ The essential elements of plaintiff's case which must be supported by some substantial evidence are: (1) That defendant was guilty of negligence as charged in the complaint, and (2) that such negligence was the proximate cause of the alleged injury.

■ It must be conceded that the note given to plaintiff by Dr. Gueffroy is a declaration against his interest and tends to show that he caused a sprain of the injured hip. It may be, as the defendant says, that the note was loosely worded and that the jury attributed a meaning to it contrary to what was intended, but that

does not destroy its probative value as evidence. We are obliged to consider this note—viewing it in the light most favorable to plaintiff—as evidence tending to show that what the defendant did was the proximate cause of plaintiff's aggravated injury.

The above note does not, however, go to the extent of admitting negligence on the part of the defendant and that is the remaining vital question in the case. The mere fact, in itself, that plaintiff sustained an injury while the defendant was undertaking to revive him does not establish negligence: *Moulton v. Huckleberry,* 150 Or. 538, 46 P. (2d) 589; *Emerson v. Lumbermen's Hospital Association,* 100 Or. 472, 198 P. 231; *Hills v. Shaw,* 69 Or. 460, 137 P. 229. The more pertinent inquiry is: Did the defendant exercise that degree of care which, under all the facts and circumstances of the case, would ordinarily have been exercised by a physician and surgeon practicing his profession in similar localities? *Lehman v. Knott,* 100 Or. 59, 196 P. 476; *Wemett v. Mount,* 134 Or. 305, 292 P. 93. There was no expert medical witness offered by plaintiff to support his charge of negligence. The only expert witness who did testify asserted positively that the defendant, in undertaking to revive plaintiff, followed the approved method. Now, by what standard is the defendant to be judged in the practice of his profession pertaining to cases of this character? Is it for a juror who has no knowledge in this field of science to say that the defendant did something he ought not to have done in the light of the known physical condition of the plaintiff? Or should the conduct of the defendant be measured by the standard of his own profession when matters of technical knowledge and skill are involved? The answer seems obvious: *Lippold v. Kidd,*

126 Or. 160, 269 P. 210, 59 A. L. R. 875; 41 Am. Jur. 240, § 129. We do not mean to hold that, in all cases, the charge of negligence against a physician and surgeon must be determined exclusively by expert testimony. There are some things of a non-technical nature occurring in the practice of medicine and surgery which a layman might well comprehend and understand. Under such circumstances, the juror needs no expert witness for his guidance and enlightenment. In the instant case we think the propriety or impropriety of the method adopted by defendant is not a matter of common knowledge and that expert testimony was essential to establish the charge of negligence. See cases listed in exhaustive note 141 A. L. R. 5; 41 Am. Jur. 240, § 129.

Plaintiff was examined and treated by several physicians and surgeons subsequent to his alleged injury. It is significant that none of them were subpoenaed by him to testify.

Finding no competent substantial evidence in the record tending to show negligence, it follows that the judgment must be reversed.

---

Petition for rehearing denied December 14, 1943

ON PETITION FOR REHEARING
(144 P. (2d) 296)

BELT, J. On Petition for Rehearing:

It is respectfully urged that the court erred: (1) In holding that there is no substantial evidence tending to show negligence and (2) in reversing the judgment without remanding the cause for a new trial.

We adhere to the original opinion holding that expert testimony was essential to show negligence on the

part of a physician or surgeon in adopting a particular method to revive a person from fainting.

■ The second question as to whether this court, in an action at law, after reversal of a judgment on the ground of insufficiency of the evidence, should remand the case for a new trial is one worthy of careful consideration. In the instant case, the defendant moved for a nonsuit and a directed verdict. There was no ruling of the trial court which prevented the plaintiff from fully developing his case. No evidence was excluded which ought to have been received. Plaintiff undoubtedly has had his day in court. He is in no position to assert that his constitutional right of jury trial has been infringed upon. The motion for a directed verdict should have been allowed. Under this state of the record, we think this court, on appeal, has the authority to render final judgment or direct the trial court to enter the same. In taking such action, we are doing only that which ought to have been done by the circuit court. Nor are we substituting our judgment on a question of fact for that of the jury, as no question of fact is involved on a demurrer to the evidence. The only legal verdict that the court could have rendered, in the light of the evidence, would have been for the defendant.

■ The entire record is before us. By virtue of Art. VII, § 3, of the Constitution of Oregon, the Supreme Court is authorized to "direct such judgment to be entered in the same manner and with like effect as decrees are now entered in equity * * *" when "it can determine what judgment should have been entered in the court below * * *." One of the purposes of the above constitutional amendment was the facilitation of the disposal of cases on appeal: *Wright v. Wimberly,* 94 Or. 1, 184 P. 740; *Knight v. Beyers,* 70 Or. 413, 134

P. 787. Regardless of what may be the practice in other jurisdictions (3 Am. Jur. 705) this court, where similar records have been involved, has, upon reversal of the judgment, refused to remand the cause for a new trial and has rendered final judgment here. See: *Davis v. Payne,* 108 Or. 72, 216 P. 195; *Staples v. Senders,* 164 Or. 244, 96 P. (2d) 215, 101 P. (2d) 232; *Hamilton v. Finch,* 166 Or. 156, 109 P. (2d) 852, 111 P. (2d) 81; *Bunnell v. Parelius,* 166 Or. 174, 111 P. (2d) 88; *Freer v. Eugene,* 166 Or. 107, 111 P. (2d) 85.

The petition for rehearing is denied.