Argued June 1, affirmed November 5, 1971

BROWNELL ET AL, *Respondents, v.* WHITE MOTOR CORPORATION ET AL, *Appellants.*

490 P2d 184

*Ridgway K. Foley, Jr.,* Portland, argued the cause for appellants. With him on the briefs were Souther, Spaulding, Kinsey, Williamson & Schwabe and Gordon Moore, Portland.

*Lloyd B. Ericsson,* Portland, argued the cause for respondents. With him on the brief were Dusenbery, Martin, Bischoff & Templeton, Portland.

Before O'CONNELL, Chief Justice, and McALLISTER, DENECKE, HOLMAN, HOWELL and BRYSON, Justices.

DENECKE, J.

The plaintiff Brownell, the owner of a truck, and the plaintiff Brander, as a representative of Lloyd's London, insurers of the truck, brought this products liability action for damage to the truck incurred when it went off the road. The defendant Freightliner manufactured the truck; the defendant White Motor sold the truck to a dealer who, in turn, sold it to Brownell. The cause went to the jury upon the theory of strict liability. The defendants appeal a judgment entered upon the jury's verdict for the plaintiffs.

The defendants contend that the trial court erred in not finding for them as a matter of law because there was insufficient evidence of any defect in the truck, as manufactured and sold, which caused any damage. Plaintiffs admit that there was no direct evidence of any defect, but contend that from the circumstances surrounding the occurrence the jury could infer that the truck was defectively manufactured and the defect caused the damage.

The owner had purchased the new truck three weeks before the damage. It had gone 8,200 miles. Only three persons had driven the truck prior to this incident and they testified that the truck handled correctly and no damage had been done to it. The accident occurred in late December, soon after sundown, on the open highway north of Klamath Falls. There was a

conflict in the evidence whether there was ice on the highway at or near the scene of the occurrence. There was snow on the side of the road.

The investigating officer testified that the driver told him a tire blew out and the vehicle swerved to the left. The driver said he may have told this to the officer; he did tell him there was a loud bang. Subsequently, upon deposition the driver stated there was a loud bang seemingly on the left rear of the truck and the axle dropped to the hub and jerked the truck into a rock wall. At trial the driver testified he heard a loud bang in the front end of the truck and the truck dropped down to the roadway.

After the damage, the truck and its parts were brought back to Freightliner. Upon request, these were made available to representatives of Lloyd's. Whether these representatives were experts in determining whether a truck is defective is in issue. Neither these representatives nor any experts were called as witnesses by plaintiffs.

Subsequently, defendants had the truck and its parts examined by a mechanical engineer specializing in metallurgy. He testified he found no defect and the evidence indicated that the tire blew and the wheel came off the axle, both as a result of striking the rock wall.

The plaintiffs rely upon *Vanek v. Kirby*, 253 Or 494, 450 P2d 778, 454 P2d 647 (1969), to support their position that no direct evidence of any specific defect is essential. The particular problem in that case was the sufficiency of the complaint. The plaintiff used the terminology of "implied warranty." We decided the case, however, upon the issue of what proof plaintiff must present and our decision is applicable to an

action couched in terminology of strict liability. *Wights v. Staff Jennings,* 241 Or 301, 405 P2d 624 (1965).

The essence of *Vanek v. Kirby,* supra (253 Or at 502), is:

"* * * For the purpose of testing the sufficiency of the complaint, we may assume that plaintiff would be able to produce evidence from which the jury could infer that as the vehicle was driven down the highway the driver found it impossible to control it because of some defect in its mechanism. At this point, if the jury accepts plaintiff's version of what happened, plaintiff has carried the proof far enough to permit the jury to infer that the vehicle was uncontrollable because of *some* unidentified defect in the mechanism of the vehicle. If plaintiff carries his burden of proving that the defect was attributable to defendant's conduct rather than to some other cause, he need not identify the specific defect which caused the vehicle to become uncontrollable. * * *."

The defendants urge that we disavow this broad language.[1] They point out that we have held that the usual cause of a vehicle leaving the road is driver negligence. *Kaufman v. Fisher,* 230 Or 626, 371 P2d 948 (1962). For this reason they urge that the fact that the vehicle left the road creates a weak inference, if any, that a defect caused it to leave the road. They argue that the reasoning of *Vanek* shifts the burden of proof to the defendants who must prove no defect, rather than the plaintiffs having the traditional burden of proving a defect. Further, they argue the defendants' burden is proving a negative, no defect, which is more difficult.

---

[1] Vanek v. Kirby, 253 Or 494, 450 P2d 778, 454 P2d 647 (1969), is criticized in a note, 22 Me L Rev 189 (1970).

■ The weakness in the first part of defendant's argument is that the plaintiffs' evidence has negated driver negligence as a cause of the vehicle leaving the road. The inference may thereby be created that a defect caused the incident. Normally, the credibility of the plaintiffs' evidence that the driver was not negligent is an issue to be left to the jury. If the jury does not believe the plaintiffs' evidence that the driver was not responsible for the vehicle leaving the road, the jury will not draw an inference that a defect was responsible. If the jury believes plaintiffs' evidence, the defendants, as is true in any case when the jury initially believes the plaintiffs' evidence, must come forward and convince the jury that the plaintiffs' evidence is incorrect, or the inferences to be drawn from plaintiffs' evidence do not lead to the conclusion that a defect in the vehicle was the cause of the damage.

*Vanek v. Kirby,* supra (253 Or at 502-503), inferentially acknowledged that this situation, that is, the defendants being faced with bringing forward evidence to prove the negative, might place the defendants at a disadvantage; however, the court was of the opinion that under the circumstances alleged the jury should be allowed to infer that the vehicle was defective. There are policy considerations in this area both for and against a decision in favor of either plaintiffs or defendants, the decisions are conflicting and the writers in disagreement. See cases cited in Annotation, 78 ALR2d 460, §§ 9, 17, 20 (1961); 1 Frumer and Friedman, Products Liability, § 12.03[9] (1960).

New Jersey is a jurisdiction evidencing this conflict within its own decisions. In *Henningsen v. Bloomfield Motors, Inc.,* 32 NJ 358, 369, 161 A2d 69, 75 ALR2d 1 (1960), plaintiff was driving her new car,

purchased 10 days before, when "Suddenly she heard a loud noise 'from the bottom, by the hood.' It 'felt as if something cracked.' The steering wheel spun in her hands; the car veered sharply to the right and crashed into a highway sign and a brick wall." An expert testified. He did not pinpoint any particular defect; however, he was of the opinion that the unusual action of the car must have been due to some mechanical defect. The court unanimously held that this was sufficient proof of breach of warranty. One writer believed the New Jersey court's acceptance of plaintiff's testimony to create an inference of defect "shocks the logical mind." Freedman, *"Defect" in the Product: The Necessary Basis for Products Liability in Tort and in Warranty*, 33 Tenn L Rev 323 (1966); Schreiber, Products Liability, 11:8 (1967).

In *Jakubowski v. Minnesota Mining and Manufacturing*, 42 NJ 177, 199 A2d 826 (1964), plaintiff brought an action based upon negligence and implied warranty for injuries suffered when an abrasive wheel he was using in his employment broke. An expert attempted to testify that the wheel must have broken from a defect. His testimony was excluded and the court deemed such ruling correct. No specific defect was shown. A majority held the circumstantial evidence of defect was insufficient to create an inference of defect. Mr. Chief Justice Weintraub and two of his colleagues were of the contrary opinion. The comment in 21 Stan L Rev 1777 (1969), opines that the position of the majority is logically sound, but as a practical matter places such a burden upon plaintiffs that many deserving injured plaintiffs will fail to recover.

In *Cintrone v. Hertz Truck Leasing, Etc.*, 45 NJ 434, 443, 452, 212 A2d 769 (1965), the theory of recovery was strict liability in tort. The majority, with

two dissenting, held that an inference of defect was created by evidence that when the driver applied the brakes to the car, "it just kept going."

These decisions and comments thereon are reviewed to illustrate the difficulty of the problem and some of the policy considerations involved.

■ After a re-examination of the principle stated in *Vanek v. Kirby,* supra (253 Or 494), in light of the above-cited decision and comments and others, we conclude that our decision should be adhered to because it is in accord with the reality of human experience. When the jury reasonably can find that the product is unchanged from the condition it was in when sold and the unusual behavior of the product is not due to any conduct on the part of the plaintiff or anyone else who has a connection with the product, logic dictates that it is a distinct possibility that there is some defect in the product.

Defendants further contend that if we adhere to the broad implications of *Vanek v. Kirby,* supra (253 Or 494), such implications should not apply to this case because unlike some of the cases allowing the jury to draw an inference of negligence, the product in this case was not destroyed rendering inspection by the plaintiffs impossible, but was available for the plaintiffs' inspection as for the defendants'. The argument is that if the product is destroyed and cannot be examined by plaintiff, the defendant manufacturer or seller is in a better position than the user to know what happened and explain it and thus the burden of explanation should, in fairness, pass to defendants. Dean Page Keeton seems to partially support this proposition. Keeton, *Products Liability—Proof of the Manufacturer's Negligence,* 49 Va L Rev 675 (1963); Schreiber, Products Liability, 11:29-11:30 (1967).

In our opinion, that the product is inspectable, or destroyed and not inspectable, is not a sound basis for deciding whether or not the inference of a defect can be drawn. Obviously, what happened to the product afterwards does not affect the logic of whether the inference of a defect is reasonable. Whether the product is destroyed before it can be inspected by plaintiffs does affect the ability of plaintiffs to prove a defect by direct evidence. If the product was inspectable and plaintiffs do not offer proof of a specific defect, the credibility of an inference of defect is lowered.

The trial court was correct in denying defendants' motion for a directed verdict.

The defendants have assigned two other rulings by the trial court as error. The first assignment concerned evidence that representatives of Lloyd's inspected the vehicle after the accident. The trial court would not permit a representative of Freightliner to testify to the effect that these Lloyd's representatives were experienced in determining the cause of truck damage.

The other assignment arose because of the fact that after inspecting the damage to the truck, Lloyd's engaged Freightliner to repair the damage, making no claim that Freightliner was obligated to make the repairs, and then voluntarily paid Freightliner for the repairs. These facts were before the jury but the trial court refused to permit defendants' counsel in his argument to the jury to refer to these facts or any inferences arising therefrom.

The court is equally divided upon these two assignments. Chief Justice O'CONNELL and Justices McALLISTER and HOWELL are of the opinion that the

trial court did not commit reversible error. Justices DENECKE, HOLMAN and BRYSON are of the opinion that the combination of the two rulings amounted to reversible error. Justice TONGUE has disqualified himself from participating in the case.

Because the court is equally divided upon these two assignments of error, the judgment of the trial court is affirmed.

Affirmed by an equally divided court.