# LYND, *Appellant,*
### *v.*
# ROCKWELL MANUFACTURING COMPANY et al,
### *Respondents.*

554 P2d 1000

*Michael J. Bird,* of Brown, Hughes, Bird & Lane,

Grants Pass, argued the cause and filed a brief for appellant.

*William V. Deatherage,* Medford, argued the cause for respondents. With him on the brief were Thomas D. Melum, and Frohnmayer & Deatherage, Medford.

HOWELL, J.

## HOWELL, J.

This is an action for damages arising out of an accident in which plaintiff lost a portion of his index finger while operating a table saw. Plaintiff's complaint charged defendant Rockwell Manufacturing Company with negligence in designing and testing the moulding insert for the saw. Plaintiff also alleged causes of action for strict products liability against Rockwell as the manufacturer and against defendant Rogue River Hardware Co. as the seller. The court directed a verdict in favor of both defendants. Plaintiff appeals from the judgment entered on that verdict.

The evidence is viewed in a light most favorable to plaintiff. At the time of the accident, plaintiff was putting a moulding edge on some small wooden decoupage plaques. Plaintiff was using a special moulding cutter head,[1] together with the moulding insert,[2] on his nine-inch Rockwell table saw. When the accident occurred, plaintiff had already cut approximately 50 plaques and was pushing another through the saw with his left hand, using a wooden block as a jig.[3] Plaintiff's right hand was on the ripping fence[4] and his fingers were over the edge, guiding the work piece. While pushing the work piece over the insert

---

[1]The moulding cutter head is an optional device which is purchased separately from the saw. The moulding cutter head consists of an upright circular steel head and a set of three adjustable blades which are attached to this head. Unlike the continuous circular blade which is used for most operations, the moulding cutter head makes only three cuts per revolution. Various sets of blades may be employed to create different designs.

[2]The insert is an oblong metal plate that fits into the table and covers the opening over the saw. There is a hole in the insert which permits the blades to protrude above the table. The insert is removable to allow for the adjustment and replacement of the blades.

[3]The purpose of the jig was to keep plaintiff's fingers away from the cutting blades. The record indicates that such jigs are commonly used when working with small pieces.

[4]The ripping fence is a movable metal rail running parallel to the cutting blades. During some operations, the work piece is held against the fence to insure a straight cut as the work piece moves through the saw. At the time of the accident, plaintiff was using the ripping fence in this fashion.

and through the cutting blades, plaintiff felt a jolt, and the work piece, the jig and the insert were thrown from the machine. The insert struck plaintiff's right index finger, nearly severing it, and the finger was amputated at the hospital.

Plaintiff had had approximately 30 years of woodworking experience and had operated many different brands of table saws during this period. He testified that he was operating the saw in a correct and workmanlike manner and that he did not know for sure how the accident occurred because it all happened so fast. However, it appears from the evidence that the work piece got slightly off center and caused a bind between the cutting blades and the fence. As a result of the bind, plaintiff was jolted and lost control of the work piece. The work piece was gouged by the blades, and the insert somehow came out of its recess and tilted sufficiently so that it too was struck by the blades. Both the work piece and the insert were violently thrown from the machine as a result of their contact with the moving blades.

Plaintiff did not present any expert testimony and defendants' expert did not know for certain what caused the insert to come in contact with the blades. However, the evidence produced by both sides clearly indicates that the insert could tilt enough to come in contact with the blades if it were struck sharply on the edge. This is because the insert is not firmly fixed to the table but is supported on only four points around its perimeter where its leveling screws rest on small ledges or pads in its recess on the table.

At the close of all the evidence, the trial court granted a motion for a directed verdict in favor of each defendant. Apparently, the basis for the directed verdict on behalf of defendant Rockwell was that plaintiff failed to offer sufficient evidence to prove that defendant Rockwell Manufacturing Company was the Rockwell Manufacturing Company which manufactured the saw in question. The basis for the

directed verdict for the defendant seller was that plaintiff failed to produce any expert testimony specifically stating that there was a design defect. Both of these rulings are assigned as error on appeal.

Plaintiff's complaint alleged that the saw was manufactured by the defendant Rockwell Manufacturing Company, a Delaware corporation. However, at trial, the evidence on this issue was conflicting. The defendant Rockwell Manufacturing Company introduced testimony which indicated that the saw was manufactured by a Pennsylvania corporation which was also named Rockwell Manufacturing Company. Plaintiff then introduced other evidence which tended to rebut at least portions of defendant's testimony. At the close of all the evidence, Rockwell moved for a directed verdict on the grounds that plaintiff had not met his burden of proving that the defendant Rockwell had manufactured the saw. The trial court initially denied the motion, but later reversed itself and granted a directed verdict.

It is clear that plaintiff had the burden of proving that the defendant Delaware corporation was the Rockwell Manufacturing Company which manufactured the saw. However, plaintiff's task in meeting this burden was facilitated by a statutory presumption which provides that the identity of a person will be presumed from identity of name. ORS 41.360(25).[5] This presumption is not a conclusive one, but it is sufficient until it is overcome by other evidence.[6] The presumption does not shift the ultimate burden of proof, which is the burden of nonpersuasion. *See U.S. National Bank v. Lloyd's,* 239 Or 298, 382 P2d 851, 396 P2d 765 (1964). However, it does effectively shift

---

[5]This presumption has been applied to the names of corporations as well as to names of individuals. *See Dean v. Felton,* 125 Or 122, 266 P 236 (1928).

[6]Pursuant to ORS 41.310, statutory presumptions are treated as indirect evidence. *See also State v. Byrd,* 240 Or 159, 400 P2d 522, *cert. denied* 382 US 865 (1965).

the burden of going forward, for unless the opposing party presents evidence which is sufficient to overcome the presumption, "the jury is bound to find according to the presumption." ORS 41.360. *See also* IX Wigmore 453-57, § 2529 (3d ed 1940).

■ Whether the presumption has been overcome by other evidence is normally a question for the jury, but if the rebutting evidence is sufficiently conclusive so that reasonable minds could not differ on that issue, then the court may decide the question as a matter of law. *See Bunnell v. Parelius,* 166 Or 174, 111 P2d 88 (1941); *Judson v. Bee Hive Auto Serv. Co.,* 136 Or 1, 294 P 588, 297 P 1050, 74 ALR 944 (1931). Thus, on appeal, the only issue is whether defendants' evidence which indicates that defendant Rockwell Manufacturing Company, a Delaware corporation, was not the Rockwell Manufacturing Company which actually manufactured the saw was conclusive enough to require a finding contrary to the statutory presumption as a matter of law.[7]

■ In *State v. Cunningham,* 173 Or 25, 144 P2d 303 (1943), this court concluded that "the difficulty of establishing identity and the ease with which erroneous proof of identity may be swept aside is the basis of the presumption created by our code." In this case, the only evidence that the defendant corporation did not manufacture the saw came from the testimony of a mechanical engineer who had been employed by the Rockwell Manufacturing Company which made the saw. He testified that the saw was not made by the defendant Delaware corporation, but was made by the Delta Power Tool Division of a different Rockwell Manufacturing Company. He indicated that the Rockwell Manufacturing Company which made the saw was a Pennsylvania corporation and that the defend-

---

[7]This is not the same issue as that which is presented when deciding whether a statutory presumption has been "overcome" by other evidence so as to *permit* a finding contrary to the presumption. In this case we must decide whether defendants' evidence was so convincing that a finding contrary to the statutory presumption was *required* as a matter of law.

ant Rockwell Manufacturing Company, a Delaware corporation, was only a "paper corporation" and existed only in Delaware. It appears from the record that the basis for this witness's testimony as to the corporate character of Rockwell Manufacturing Company was that he was a stockholder of that corporation as well as an employee of its Delta Power Tool Division, and he testified that his stock certificate indicated that his Rockwell Manufacturing Company was a Pennsylvania corporation. However, neither the stock certificate nor any other corroborating evidence was introduced.[8]

Plaintiff presented other evidence which tended to rebut the testimony of Rockwell's witness that the defendant Delaware corporation is only a "paper corporation." Plaintiff introduced a certificate from the Oregon Department of Commerce which certified that the Delaware Rockwell Manufacturing Company had qualified under Oregon law and was authorized to do business in this state as a foreign corporation in good standing. We also note that the booklet which accompanied the saw when it was purchased lists "Rockwell Manufacturing Company, 2755 Northeast Broadway, Portland, Oregon," as an authorized parts distributor for Delta Power Tools, the manufacturing division of the Rockwell corporation which manufactured the saw. However, we do not know for certain whether this is the same Rockwell Manufacturing Company which manufactured the saw or even if it is the same corporation which was sued in this case.

■ From the evidence in the record, we are unable to determine as a matter of law whether or not there are two or more distinct corporations of the same name or

---

[8]It is undisputed that the corporate address of the company which manufactured the saw was listed on the literature which accompanied the saw as "The Rockwell Building - Pittsburg, Pa." However, the fact that the corporate address of a large national corporation is in another state is no indication that the company is not a Delaware corporation. Indeed, it is common knowledge that many Delaware corporations have their principal place of business in another state.

only one. The evidence produced by the defendant corporation on this issue is certainly not conclusive. Clearly, much better evidence must have been available to this defendant to establish one way or another whether it is the corporation responsible for manufacturing this saw. Under such circumstances, the weakness of the evidence which was produced tends to bolster the evidence offered by plaintiff on this issue. *See State v. Cunningham, supra:*

"* * * 'Since identity is more easily disproved than established, weakness of evidence in disproof tends to strengthen the evidence of identity.' " 173 Or at 55.

Because the evidence is in conflict and defendants' evidence is not conclusive enough to preclude a jury verdict in accordance with the statutory presumption as a matter of law, we hold that the trial court erred in directing a verdict for the defendant Rockwell Manufacturing Company. On remand, both sides should be able to produce better evidence directed to this issue.

Plaintiff also assigns as error the directed verdict which was granted in favor of the defendant seller, Rogue River Hardware. In his motion for a directed verdict for this defendant, defendants' counsel argued that plaintiff did not produce sufficient evidence to prove a design defect. Specifically, he argued that design defect cases require the plaintiff to produce expert testimony as to the allegedly improper design, and that, in the absence of such expert testimony, plaintiff's case must fail. The record indicates that the trial court granted the motion for a directed verdict for Rogue River Hardware on this basis.

■ Although expert testimony can usually be a valuable assistance to the court and to the jury in products liability cases, it is not always an indispensable element of plaintiff's case. In *Brownell v. White Motor Corporation,* 260 Or 251, 490 P2d 184, 51 ALR3d 1 (1971), this court held that the trial court correctly denied defendants' motion for a directed verdict even though plaintiff presented no expert testimony of any

defect. While *Brownell* did not involve a defective design, we fail to see why a special, blanket rule should be created for design defect cases.

■ Admittedly, design defect cases sometimes involve technical, scientific issues which cannot be fully understood by the average juror without some expert assistance. In such cases, expert testimony as to the defective nature of defendant's design will be an indispensable element of plaintiff's case. However, when the issues presented relate to matters which require only common knowledge and experience to understand them, the testimony of experts is not essential. *See generally* VII Wigmore 453, § 2090 (3d ed 1940) and cases cited therein. This is the same rule which is applied in other cases which frequently involve technical, scientific issues such as medical malpractice cases. *See, e.g., Getchell v. Mansfield,* 260 Or 174, 489 P2d 953 (1971); *Nation v. Gueffroy,* 172 Or 673, 142 P2d 688, 144 P2d 296 (1943); Annot., 40 ALR3d 515 (1971); Annot., 81 ALR2d 597 (1962).

■ In this case, the jury had the benefit of extensive explanations and demonstrations of the saw and its components by plaintiff, who was an experienced woodworker. Plaintiff also demonstrated what he was doing when the accident occurred. Defendants' expert then testified as to his opinion of how the accident happened. On cross-examination, plaintiff also elicited additional expert testimony from defendants' expert relating to the allegedly defective design. We believe that these demonstrations, coupled with defendants' expert testimony, were sufficient to enable the jury to reach an adequate understanding of the issues in this case without additional expert testimony.

Plaintiff's evidence indicated that, in contrast to other models manufactured by both Rockwell and others, the insert for this saw was not firmly fixed to the table. In fact, there was testimony that the insert on this model vibrated and "jiggled" or "floated" when the saw was in operation. This is because the insert

rests only on four leveling screws within its recess on the table. Plaintiff's evidence clearly demonstrated that, as a result of this design, the insert could tilt and come in contact with the blades of the cutting head. Plaintiff, who had over 30 years' woodworking experience, also testified that the designs of several other inserts in use on other models made such an occurrence impossible.

Defendants' expert did not dispute this evidence, and Rockwell offered no evidence of any other similar inserts in use in any other models. Defendants' expert did explain, however, that Rockwell's insert could not come in contact with the blades unless it had been removed from its recess by some outside force. This expert also testified concerning his opinion as to how the accident occurred. He stated that it was likely that, as a result of the bind and the subsequent jolt, the work piece struck the insert and caused it to tilt and come in contact with the blades.[9]

The jury could have drawn similar inference and concluded that when plaintiff was jolted and lost control, either the work piece, the jig, or plaintiff's left hand struck the end of the insert and caused it to pop up and tilt sufficiently to come in contact with the blades.

The jury could also have concluded that the accident could not have occurred if any one of several other designs had been employed. Plaintiff introduced several exhibits depicting alternate insert designs which were in use on other saws manufactured both by Rockwell and other companies. One of these inserts was fastened to the table with screws; another employed a spring locking device to hold it in place. A third design, on a different Rockwell model, utilized a metal pin which extended from the far end of the insert and locked under the lip of the table. Plaintiff's

---

[9]Much of the rest of defendants' evidence was directed to the issue of product misuse. However, that issue is not involved in this appeal which concerns only the propriety of the directed verdicts which were granted.

testimony indicates that the use of any of these alternative designs would have prevented the accident. Moreover, on cross-examination, defendants' own expert admitted that if the insert had been fastened to the table, it could not have come in contact with the blades. This expert also indicated that the designs of these other models were safe, and the fact that they were in use both by Rockwell and others at the time this saw was manufactured shows that they were both feasible and economically practical.

Apparently the only reason for not employing an alternate insert design on this saw was to allow for easier access when changing blades. Although the evidence indicates that this is a matter of some importance for industrial users, we believe that the jury should have been allowed to determine whether this enhanced accessibility was sufficiently important to outweigh the safety advantages of the alternate designs. In other words, they should have been allowed to consider whether "a reasonably prudent manufacturer would have so designed [the insert] had he known of the risk involved which injured plaintiff." *Phillips v. Kimwood Machine Co.,* 269 Or 485, 494, 525 P2d 1033 (1974). In making this judgment, the jury should weigh both the danger involved and the utility of defendant's design and determine whether the change of design necessary to alleviate the danger would impair the product's utility to such a degree that it would still be reasonable to market the product despite the danger. 269 Or at 495. *See also Roach v. Kononen/Ford Motor Co.,* 269 Or 457, 464-65, 525 P2d 125 (1974).

In summary, we feel that the evidence in this case, including plaintiff's exhibits relating to the feasibility of other designs and the testimony of defendants' own expert witness, concerning the probable cause of the accident and the allegedly defective design, was sufficient to enable the jury to reach a reasoned determination of these issues. We do not believe that plaintiff

was required to produce additional expert testimony specifically stating that the design in this case was defective, and we hold that the motion for a directed verdict on behalf of defendant Rogue River Hardware should have been denied.[10]

Reversed and remanded for a new trial.

**BRYSON, J.,** dissenting.

I dissent from that portion of the majority opinion which holds that the trial court erred in allowing a directed verdict in favor of the defendant seller, Rogue River Hardware.

The plaintiff alleged that the 9″ table saw and insert "were defective as a result of their design * * *."

The defendant Rogue River Hardware argues that "[t]here was no competent evidence introduced to show that the design of the saw was defective or that the alleged defective design was the cause of the accident" and that "[e]xpert testimony was necessary to make a jury question on these issues."

The plaintiff argues, "The jury could easily have concluded from Plaintiff's testimony that the saw was being operated in the proper manner and that through no fault of the Plaintiff, the insert flew from the saw causing Plaintiff's injuries" and that "the only reasonable inference to be drawn from Plaintiff's testimony and from the evidence, was that the insert was designed in such a manner as to allow it to tip" and contact the cutter head.

The plaintiff offered no expert testimony. The plaintiff testified that he did not know how or what caused the accident. Plaintiff did offer considerable circumstantial evidence of alternate designs of com-

---

[10]Plaintiff also assigns as error a ruling of the trial court excluding one of his exhibits. The exhibit in question was not included as part of the record on appeal. However, our review of the transcript, including plaintiff's offer of proof, indicates that the exhibit should have been admitted.

peting brands of table saws and that other brands of saws had devices to hold the insert in the base or table of the saw.

The defendant offered engineering and expert testimony that there was no defect in the design of the saw and that in 10 years' use of the saw and insert, no insert had come out while the saw was in use. There is also testimony that one and one-half million saws of this design have been sold and there was no report of an accident of the nature here involved.

The instant case involves a technical piece of machinery and its design requires more than "common knowledge and experience" to understand and explain if there was a defect in the saw involved. The effect of the majority opinion would be to allow all cases of this nature to go to the jury for their determination as to liability. Without expert testimony, it is my opinion that the jury would have nothing but conjecture on which to reach their decision.

The burden of proof of defective product design is on the plaintiff.

"Proof of nothing more than that a particular injury would not have occurred had the product which caused the injury been designed differently is insufficient to establish a breach of the manufacturer's or seller's duty as to the design of the product. And mere proof of occurrence of the injury itself is not proof of improper product design." (Footnotes omitted.) 2 Hursh and Bailey, American Law of Products Liability 301, § 9:17.

"Expert testimony may, and often does, play an important part in proving or disproving, in a products liability case, a defective product design. The offering of expert testimony by the plaintiff to establish alleged negligent design has been held to raise a jury question whether such design is negligent." (Footnotes omitted.) *Id.* at 306, § 9:18.

In some cases expert testimony, in product liability cases, is indispensable. 1 Frumer and Friedman, Products Liability 254.43, § 12.02(1).

The plaintiff in this case did not plead or prove his case on the basis of res ipsa loquitur.

> "* * * However, res ipsa loquitur will not be applied in a defective-design case where it appears that the product might have been fit for its purpose when delivered by the defendant." (Footnote omitted.) 2 Hursh and Bailey, American Law of Products Liability 301-02, § 9:17.

In *Denny v. Warren,* 239 Or 401, 405, 398 P2d 123 (1964), a defect or leak developed in a brass coupling and the evidence disclosed there were three possible causes for the leak. We said:

> "* * * [I]n order to apply *res ipsa loquitur,* it must be possible to say * * * that it is more probable than not that the person whose negligence caused the injury was the defendant and not some third party, e.g., in the case before us, a remote supplier."

*See also Pattle v. Wildish Construction Co.,* 270 Or 792, 797, 529 P2d 924 (1974).

In the present case plaintiff was running a short block of wood, with the aid of a homemade wooden jig, between the cutter head and the fence to make short pieces of moulding. Common sense dictates that this is a dangerous operation and should be avoided. Defendant's engineer testified that this caused a bind and the rotating cutter head rejected the wooden block and caused undue force on the insert, which in turn struck the plaintiff. The plaintiff acknowledged the danger in cutting short pieces of wood on any table saw under the method he was using at the time of the accident. This procedure was contrary to the instructions in defendant's operational manual, which plaintiff acknowledged he had read.

In this case the defendant offered expert testimony as well as other testimony which showed there was no design defect, as alleged by plaintiff. The plaintiff offered no expert testimony and only circumstantial evidence as to what might have caused his injury. Under these circumstances the probabilities are greater that the accident was caused by plaintiff's

negligent manner in which he was operating the saw than by a defective design in the table saw.

"* * * It was incumbent upon plaintiff to show that of the various possibilities the theory imposing liability on defendants was the most probable; to require less would permit the jury to speculate. * * *" *Skeeters v. Skeeters,* 237 Or 204, 214, 389 P2d 313 (1964).

Under these circumstances the jury should not be allowed to speculate that the design of the product was defective. For this reason I would affirm the trial court in granting the directed verdict in favor of defendant Rogue River Hardware.