[No. 4738–1. Division One. April 17, 1978.]

RONALD E. POTTER, *Appellant,* v. VAN WATERS & ROGERS, INC., ET AL, *Respondents.*

*Vance, Davies, Roberts, Reid & Anderson* and *Jorgen E. Schleer,* for appellant.

*Stafford, Frey & Mertel, Charles W. Mertel, Karr, Tuttle, Koch, Campbell, Mawer & Morrow, Neil S. Gladson, Robert P. Piper, Lee, Smart, Cook, Dunlap & Biehl,* and *John P. Cook,* for respondents.

CALLOW, J.—The plaintiff, Ronald E. Potter, commenced this action to recover damages for bodily injuries suffered in a fall claimed to have been caused by a defective rope. The defendants are the supplier, wholesaler and retailer of the rope.

At the time of the accident, the plaintiff was tying back canvas curtains against a headboard box located on the bed of a truck. To tie back the curtains, he was using a 3–strand manila or hemp rope about 3/8 inches thick. After fastening the rope to the headboard and looping it around the curtains, he began pulling on the rope to secure the curtains against the headboard. As he was pulling on the rope, the rope suddenly parted and he fell backwards off the back of

the truck onto the pavement some 4 1/2 feet below, sustaining personal injuries.

The plaintiff filed a complaint naming as defendants Van Waters & Rogers, Inc., and Schermerhorn Brothers, Inc. The complaint alleged that the plaintiff's employer, Brennan–Western, Inc., had purchased the manila rope from Van Waters & Rogers, and that Van Waters & Rogers had purchased the rope from Schermerhorn Brothers. Van Waters & Rogers admitted selling the rope to plaintiff's employer, but denied the rope was defective and cross-claimed against Schermerhorn Brothers for indemnification. Schermerhorn Brothers denied liability and alleged that the damages, if any, sustained by the plaintiff were the result of his own negligence or misuse of the rope or the misuse of third persons over whom Schermerhorn Brothers had no control. Schermerhorn Brothers further alleged in its answer that the damages, if any, were the proximate result of an unavoidable accident due to unforeseeable conditions over which it had no control. Schermerhorn Brothers also commenced a third party complaint for indemnification against American International Commerce, Inc., its supplier and importer of the rope. American International Commerce appeared but did not answer this complaint.

Schermerhorn Brothers and Van Waters & Rogers moved for a summary judgment of dismissal, based on the recitals in an affidavit, on the ground that the plaintiff had no evidence that the rope was defective. The trial court granted the motion and an order of dismissal was entered.

The issues presented on appeal are:

1. Drawing all reasonable inferences in the light most favorable to the losing party, was any evidence presented that would raise a genuine issue of material fact regarding the existence of a defect in the rope?

2. Must an allegedly defective product be totally destroyed before the injured party may use circumstantial evidence to establish a prima facie strict liability case?

3. Was the opinion of an expert necessary in order to establish the rope in question was defective?

4. Were the witnesses qualified to give an opinion as to whether the rope was defective?

*Drawing all reasonable inferences in the light most favorable to the losing party, was any evidence presented that would raise a genuine issue of material fact regarding the existence of a defect in the rope?*

The defendants assert that the trial court was correct in granting their motion for summary judgment, and submit that the plaintiff failed to present *any* evidence, expert or other, direct or circumstantial, that raised an inference that the rope was defective. This assertion is based on the following propositions: (1) The plaintiff met some of the requirements for establishing a prima facie strict liability case, but he failed to show that a defect existed, and that the rope was in a defective condition when it left the hands of the defendants. (2) The allegations and complaints about other sections of the same coil of rope do not satisfy the plaintiff's burden of proof with regard to the specific section of rope involved, for specific evidence is necessary to rebut the defendants' contentions. (3) The plaintiff's affidavits of three fellow workers did not contain evidence on (a) the date the rope was bought, (b) the date the rope was removed from the carton, (c) the condition it was stored under, or (d) the exact nature and extent of its prior use. (4) These three affidavits show only that an unfortunate accident occurred, but proving that an accident occurred is insufficient to show that the product was defective. (5) The evidence set forth in the affidavits of the three fellow workmen and of the plaintiff's expert is inadmissible, as the opinions expressed therein, instead of being based on specific facts regarding a particular defect in the rope, are based on the *assumption* that the particular segment of rope was not subjected to misuse prior to its use by plaintiff. (6) The plaintiff failed to introduce evidence to negate other possible causes of the accident, *i.e.,* showing that

(a) the rope segment involved was not improperly cut from the coil, (b) was not improperly stored, (c) was not involved in a prior accident, (d) was not subjected to misuse prior to its use by plaintiff, or (e) did not break due to a fellow employee's negligence. The plaintiff is also claimed to have failed to show that he did not assume the risk. The plaintiff asserts that the evidence he presented, taken in the light most favorable to him, did create a genuine issue of material fact regarding the existence of a defect in the rope. We agree.

*Jacobsen v. State,* 89 Wn.2d 104, 108–109, 569 P.2d 1152 (1977), stated:

> The purpose of the summary judgment procedure is to avoid an unnecessary trial when there is no genuine issue of material fact. However, a trial is absolutely necessary if there is a genuine issue as to *any* material fact. *LaPlante v. State,* 85 Wn.2d 154, 158, 531 P.2d 299 (1975); *Morris v. McNicol,* 83 Wn.2d 491, 519 P.2d 7 (1974); *Preston v. Duncan,* 55 Wn.2d 678, 681, 349 P.2d 605 (1960). A "material fact" is one upon which the outcome of the litigation depends. *Morris v. McNicol, supra; Barber v. Bankers Life & Cas. Co.,* 81 Wn.2d 140, 500 P.2d 88 (1972). Each party must furnish the factual evidence on which he relies. *Lundgren v. Kieren,* 64 Wn.2d 672, 677, 393 P.2d 625 (1964). CR 56(c) provides that summary judgments may be rendered on the basis of "the pleadings, depositions, and admissions on file, together with the affidavits, if any," submitted by the parties. Supporting and opposing affidavits must be made on personal knowledge and must set forth facts that would be admissible in evidence and must show affirmatively that the affiant is competent to testify on the matters stated therein. CR 56(e).
>
> Initially the burden is on the party moving for summary judgment to prove by uncontroverted facts that there is no genuine issue of material fact. *LaPlante v. State, supra* at 158; *Rossiter v. Moore,* 59 Wn.2d 722, 370 P.2d 250 (1962); 6 J. Moore, *Federal Practice* ¶ 56.07, ¶ 56.15[3] (2d ed. 1948). If the moving party does not sustain that burden, summary judgment should not be entered, irrespective of whether the nonmoving party has submitted affidavits or other materials. *Preston v.*

*Duncan, supra* at 683; *see also* Trautman, *Motions for Summary Judgment: Their Use and Effect in Washington,* 45 Wash. L. Rev. 1, 15 (1970). In ruling on a motion for summary judgment, the court must consider the material evidence and all reasonable inferences therefrom most favorably for the nonmoving party and, when so considered, if reasonable people might reach different conclusions, the motion should be denied.

■ To establish a prima facie case under strict liability a party is required to show that (1) the product had a defect, (2) which existed at the time the product left the manufacturer, (3) was not contemplated by the user, (4) the product was "not reasonably safe" due to the defect, and (5) the defect was the proximate cause of plaintiff's injury. *Seattle–First Nat'l Bank v. Tabert,* 86 Wn.2d 145, 542 P.2d 774 (1975); *Curtiss v. YMCA,* 82 Wn.2d 455, 511 P.2d 991 (1973); *Ulmer v. Ford Motor Co.,* 75 Wn.2d 522, 452 P.2d 729 (1969); Restatement (Second) of Torts § 402A (1965). *See generally* Annot., 51 A.L.R.3d 8 (1973).

Here, although the plaintiff did not present direct evidence, he did present circumstantial evidence that would show, if believed, that (a) the defendant Van Waters & Rogers sold the rope involved here to the plaintiff's employer; (b) the rope was bought by the defendant Van Waters & Rogers from the defendant Schermerhorn Brothers; (c) the rope was new and had not been removed from its carton until the day before the accident; (d) the particular carton did not contain warnings that the rope inside was not of the same quality as ordinary 3/8–inch 3–strand manila rope; (e) the employee in charge of cutting the rope from the carton into 60–foot lengths tested some of the segments, which resulted in several of the segments breaking in his hand with the application of slight force; (f) the particular segment involved was used on only one trip prior to its use by the plaintiff; (g) at the time the plaintiff used the rope it "appeared to be new and in good condition"; (h) the plaintiff was injured when the rope broke; (i) the rope broke while being subjected to limited force and while

being used in a normal fashion; (j) the break occurred in a straight section, not near any sharp object, knot, bend or kink; (k) the plaintiff later obtained and tested a 30–foot-long piece of 3/8–inch manila rope from the same coil of rope as the coil from which the rope in question was taken, resulting in a similar break although the rope still appeared new, was not discolored, contained nothing irregular, and was still coiled as when taken from the carton; (l) a 3/8–inch manila rope would not break under a steady gradual pull by a 200–pound man unless it was jerked or yanked or was brought into contact with a sharp object, and a 3/8–inch manila rope that did break under such a steady pull would be defective at the point of the break.

The defendants did not contend that the rope broke due to some other cause such as improper storage, or improper cutting from the coil. They assert that the plaintiff did not prove a defect existed by means of admissible evidence, and that the plaintiff did not disprove *all* other *possible* causes. The plaintiff is not required for purposes of defending against a motion for summary judgment to fend off defenses which have not been urged by the moving party. As stated in *Kuster v. Gould Nat'l Batteries,* 71 Wn.2d 474, 485, 429 P.2d 220 (1967):

> It is the law that the plaintiff must establish with reasonable certainty a manufacturing defect as a cause of the accident in order for him to recover damages from the defendant. In attempting so to do, *if the evidence shows* that the injury is equally or else with reasonable certainty attributable to other probable causes, he must also exclude such other causes. *But in so doing he is not compelled to meet conjecture or mere possibilities with proof to the contrary.*

(Italics ours.) *See also Pearson Constr. Corp. v. Intertherm, Inc.,* 18 Wn. App. 17, 19, 566 P.2d 575 (1977). The plaintiff has fashioned a prima facie case under Restatement (Second) of Torts § 402A (1965) if he submits admissible evidence establishing each of the elements under the rule. The possibility of contradictory evidence at the time

of trial does not detract from the inferences raised or eliminate the right to trial on the merits. *See May v. Columbian Rope Co.,* 40 Ill. App. 2d 264, 189 N.E.2d 394 (1963). Here, circumstantial evidence in the record provides sufficient facts from which a reasonable person might conclude that this rope, which (1) was cut from the coil in a recently delivered manufacturer's carton on one day, (2) "appeared new," (3) had only been used once, (4) yet broke the next day while being used in a normal fashion, (5) resulting in the plaintiff's injury, was "not reasonably safe" and that it had a manufacturing defect. In *May v. Columbian Rope Co., supra,* inferences were raised that the rope that broke was "fairly new" and that a defect existed. The court stated at pages 270–71, 275:

> Although plaintiff's case rests on circumstantial evidence, defendant's argument in support of the judgment notwithstanding the verdict correctly assumes that it is based upon that kind of circumstantial evidence which is embraced within the doctrine of res ipsa loquitur. . . . [Res ipsa loquitur presents one aspect of circumstantial evidence, and that the two terms are not mutually exclusive. By arguing from his evidence that the breaking of the rope "speaks for itself," i.e., is evidence of defendant's negligence, plaintiff brings his case well within the doctrine of res ipsa loquitur . . . A contrary conclusion would require that nomenclature be exalted at the expense of substance. .
>
> . . .
>
> Our holding that plaintiff's case based on the doctrine of res ipsa loquitur was sufficient to resist judgment notwithstanding the verdict disposes of defendant's contention that plaintiff must prove specific negligence. The accident itself, together with its attendant circumstances, affords reasonable evidence that it arose from want of proper care on defendant's part.

Res ipsa loquitur has not been urged upon us as a theory supporting the plaintiff's case by name. The argument regarding the inferences of negligence bring it before us and present it as a viable theory to support a prima facie case of strict liability. The plaintiff has presented the theory of

recovery without identifying it specifically, and should be permitted full and fair opportunity to present evidence under that theory. *Bernal v. American Honda Motor Co.*, 87 Wn.2d 406, 414, 553 P.2d 107 (1976).

 The argument that opinion testimony regarding a defect is inadmissible without specific foundation testimony based on personal knowledge regarding the date the rope was manufactured or purchased, the date it was removed from the carton, storage conditions, and proof that the rope was not misused in the one previous trip or damaged due to a fellow employee's negligence, must also be rejected. The plaintiff's witnesses did present evidence that, if believed, would show the date the rope was sold and delivered to the plaintiff's employer, the date it was cut from the coil, and that it "appeared new" and was being used in a normal fashion at the time of the accident. The defendants' assertion that the plaintiff's expert witness' affidavit was inadmissible due to being based on assumptions is also rejected. Here, the expert witness, after swearing to both his professional qualifications and that he had personally examined the rope in question, stated:

> Assuming that the rope in question broke while being subjected to steady gradual pull by a 200–pound man with no jerking or yanking or falling weight involved and further assuming that the break occurred in a unknotted, straight portion of the rope and that the rope was not in contact with any sharp object at that point, then it is my opinion that the rope was not of normal strength at that point and therefore was defective at the point of the break.

In *Levea v. G.A. Gray Corp.*, 17 Wn. App. 214, 221, 562 P.2d 1276 (1977), this court stated:

> Where the facts upon which a hypothetical question is based are subject to conflicting evidence, the answer to such a question is not rendered speculative or otherwise inadmissible providing that the question fairly incorporates the facts supported by evidence under the examiner's theory.

*See Kuster v. Gould Nat'l Batteries, supra* at 483. The plaintiff's expert witness assumed the circumstantial evidence plaintiff presented to be true. His opinion, based on facts developed by the plaintiff's own evidence, is admissible.

*Must an allegedly defective product be totally destroyed before the injured party may use circumstantial evidence to establish a prima facie strict liability case?*

██ The defendants assert circumstantial evidence may be used to establish a prima facie case in strict liability *only* if the allegedly defective product has been totally destroyed, and cites *Bombardi v. Pochel's Appliance & TV Co.,* 10 Wn. App. 243, 518 P.2d 202 (1973), as authority for their position. We disagree.

In *Bombardi v. Pochel's Appliance & TV Co., supra* at 246–47, the court stated:

We must emphasize that the mere fact of an accident, standing alone, does not generally make out a case that a product was defective. On the other hand, there are some accidents as to which there is common experience dictating that they do not ordinarily occur without a defect, and as to which the inference that a product is defective should be permitted. Particularly apposite to the instant situation is the opinion of the Oregon Supreme Court in *Heaton v. Ford Motor Co.,* 248 Ore. 467, 471, 435 P.2d 806 (1967). There the court discussed the requirement of proving that a product is dangerously defective ˙as follows:

In the type of case in which there is no evidence, direct or circumstantial, available to prove exactly what sort of manufacturing flaw existed, or exactly how the design was deficient, the plaintiff may nonetheless be able to establish his right to recover, by proving that the product did not perform in keeping with the reasonable expectations of the user. When it is shown that a product failed to meet the reasonable expectations of the user the inference is that there was some sort of defect, a precise definition of which is unnecessary. If the product failed under conditions concerning

which an average consumer of that product could have fairly definite expectations, then the jury would have a basis for making an informed judgment upon the existence of a defect.

(Footnotes omitted.) Defendants have not cited any authority directly supporting their novel proposition. As a result, we are not convinced that we should stray from the accepted norm of allowing circumstantial evidence to be admitted in an effort to prove the existence of a defect irrespective of whether or not the allegedly defective product has been destroyed. *See, e.g., Elmore v. American Motors Corp.,* 70 Cal. 2d 578, 451 P.2d 84, 87, 75 Cal. Rptr. 652, 33 A.L.R.3d 406 (1969); *Ostendorf v. Brewer,* 51 Ill. App. 3d 1009, 367 N.E.2d 214, 217 (1977); *Brandenburger v. Toyota Motor Sales, U.S.A., Inc.,* 162 Mont. 506, 513 P.2d 268, 274 (1973); *Moraca v. Ford Motor Co.,* 66 N.J. 454, 332 A.2d 599, 601 (1975); *Jackson v. Melvey,* 56 App. Div. 2d 836, 392 N.Y.S.2d 312, 314 (1977); *Pearson v. Franklin Laboratories, Inc.,* __ S.D. __, 254 N.W.2d 133, 140 (1977); *General Motors Corp. v. Hopkins,* 548 S.W.2d 344, 349–50 (Tex. 1977); *Pearson Constr. Corp. v. Intertherm, Inc.,* 18 Wn. App. 17, 18, 566 P.2d 575 (1977).

> *Was the opinion of an expert necessary in order to establish the rope in question was defective?*

The defendants assert the testimony of an expert was necessary to establish that the rope was defective. The defendants further contend that the plaintiff's evidence, which shows that the defect was not observable by the untrained eye, underscores this point. We disagree.

█ The three workmen did not need to be qualified as "experts" in the qualities and performance of manila rope since the expert testimony of a professional expert was not a prerequisite to the establishment of a prima facie case in strict liability. In taking this position we adopt the reasoning expressed in *Lynd v. Rockwell Mfg. Co.,* 276 Ore. 341, 348–49, 554 P.2d 1000, 1004–05 (1976):

Although expert testimony can usually be a valuable assistance to the court and to the jury in products liability cases, it is not always an indispensable element of plaintiff's case. In *Brownell v. White Motor Corporation,* 260 Or 251, 490 P2d 184, 51 ALR3d 1 (1971), this court held that the trial court correctly denied defendants' motion for a directed verdict even though plaintiff presented no expert testimony of any defect.

*Were the witnesses qualified to give an opinion as to whether the rope was defective?*

The defendants assert the three fellow workmen and the plaintiff were not competent nor qualified to testify regarding the properties of 3/8–inch manila rope. They base this assertion on the proposition that (1) there is no indication that any of the plaintiff's witnesses observed the prior use of this rope; (2) that the three fellow workmen and the plaintiff worked with *other* segments of manila rope does not satisfy the requirement for personal knowledge of this segment's defectiveness pursuant to CR 56(e); and (3) the plaintiff's tests of other sections of rope believed to be from the same coil are not relevant to the specific segment in question.

The sworn testimony of a witness must "be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated". CR 56(e). All of the plaintiff's witnesses had personal knowledge of the rope in question, gave admissible evidence based on personal knowledge, and were competent to testify regarding the 3/8–inch manila rope. The three lay witnesses were experienced handlers of 3/8–inch manila rope, and two of them and the plaintiff were personally present when the accident occurred. Further, both the plaintiff and one of the fellow employee witnesses personally tested other segments of rope from the same coil and witnessed similar breaks. It was the considered opinion of these men, experienced as they were with the handling of 3/8–inch

manila rope, that this particular "new" rope did not perform in a "reasonably safe" manner. While the *weight* of this testimony might diminish in the eyes of the finder of fact under cross–examination at trial, it is sufficient to pass muster under CR 56(e). *Cf. Bernal v. American Honda Motor Co.,* 87 Wn.2d 406, 412–13, 553 P.2d 107 (1976); *Morris v. McNicol,* 83 Wn.2d 491, 496, 519 P.2d 7 (1974).

The conclusions we have reached to the foregoing issues make it unnecessary for us to consider other questions presented. The cause is remanded for trial.

FARRIS, C.J., and WILLIAMS, J., concur.