[No. 19353-1-II.    Division Two.    January 10, 1997.]

THOMAS ORD, *as Trustee, Appellant*, v. KITSAP COUNTY, ET AL., *Respondents*.

*Moe Birnbaum*, for appellant.

*Russell D. Hauge, Prosecuting Attorney*, and *Shelley E. Kneip, Deputy*, for respondents.

TURNER, J. — Thomas Ord, trustee for GUAVA Trust, appeals a superior court summary judgment affirming Kitsap County's imposition of a six-year building permit moratorium on GUAVA's land. We hold that RCW 76.09.060(3) of the Forest Practices Act is self-executing, and that the County did not exceed its authority by imposing the moratorium. Thus, we affirm.

GUAVA Trust owns a five-acre parcel of forest land in Kitsap County. On February 16, 1993, GUAVA filed a forest practices application with the Department of Natural Resources (DNR) for a Class II permit to log its land. The

application stated: "The landowner does not intend to clear, improve or develop land within three years. . . . The landowner intends to reforest . . . [by] planting . . . DF [Douglas fir seedlings]." Ord and the intended timber operator signed the form, acknowledging: "We affirm that the information contained herein is true . . . and understand that this proposed forest practice is subject to the current rules and regulations and the Forest Practices Act."

The DNR approved the application and issued a permit effective February 21, 1993, with this condition: "Landowner is advised that the county/city may place a six year moratorium on all building development permits since this site is being logged as a forestry operation." The DNR forwarded a copy of the permit to Kitsap County. Because the permit pertained to a "non-conversion"[1] forest practice, the County notified GUAVA of its policy to deny building and land use permits on such land for six years.[2]

On March 15, 1993, Kitsap County adopted Ordinance 150-1993,[3] which sets standards and procedures for "implementation of permit moratoria," and describes a process for permitting conversion of forest land to uses other than logging.

[1]"Conversion," as used here, refers to converting land to an active use which is incompatible with timber-growing.

[2]This "NON-CONVERSION NOTICE," mailed March 11, 1993 and recorded with the Kitsap County Auditor, stated:

"We have received a copy of your Forest Practices Application/Notification which states that you have no intention of converting your property to a non-forestry use. It is Kitsap County policy to deny building permits, subdivisions and land-use permits on all land logged under a **"non-conversion."** This policy is in effect for six years after the approval date . . . and applies to the current owners as well as future purchasers or heirs. This letter is only intended to clarify our position on logging, not to affect your decisions. However, if you have any questions on what Kitsap County requires on "conversion" Forest Practice Applications, please give us a call. . . ."

[3]The purpose of Ordinance 150 is to: "mitigate, minimize, or eliminate potential impacts from timber harvest on drainage courses and *critical areas*. . . . These regulations establish procedures for review of *conversion forest practices application(s)* . . . and implementation of permit moratoria. . . . This ordinance implements . . . RCW 76.09.060 relating to the six year permit moratorium." Kitsap County Ordinance 150-1993, § 2.

On January 20, 1994, GUAVA asked the County to convert the site, which had been 100 percent clear-cut of merchantable timber, to a non-timber-growing use so a house could be built on it. Following Ordinance 150-1993, the County held a hearing to determine whether the conversion application should be approved and whether a building moratorium should be imposed. The County Commissioners found that GUAVA's logging operation violated Ordinance 150-1993 and denied conversion of the parcel to a non-forestry use. They also exercised authority under RCW 76.09.060 and invoked a six-year moratorium on building permits for the site. RCW 76.09.060(3)(b)(i) says:

> (b) If the application or notification does not state that any land covered by the application or notification will be or is intended to be so converted:
>
> (i) For six years after the date of the application the county, city, town, and regional governmental entities may deny any or all applications for permits or approvals, including building permits and subdivision approvals, relating to nonforestry uses of land subject to the application[.]

GUAVA filed a writ of certiorari in superior court asking that the moratorium be set aside. The trial court denied GUAVA's motion for summary judgment. GUAVA now appeals, alleging that the County's actions deprived it of valuable property rights without due process of law. GUAVA claims it lacked notice of potential building restrictions because its logging permit was issued three weeks before Ordinance 150-1993 was adopted.[4] GUAVA argues that the County lacked retrospective authority to enforce the ordinance.

The County concedes that Ordinance 150-1993 was adopted three weeks after GUAVA received its permit. The County argues, however, that it could impose a build-

---

[4]GUAVA implies that logging was already completed prior to the effective date of the ordinance. The record does not support this claim although it appears that a logging contract may have been made.

ing moratorium under RCW 76.09.060(3), even without adopting an enabling ordinance.[5] We agree.

■ The standard of review of a superior court writ of certiorari decision is de novo for legal issues. RCW 7.16.120(3). Factual issues, if any, are reviewed for substantial evidence. RCW 7.16.120(5). Factual review is deferential; we view the evidence in the light most favorable to the party who prevailed in the highest forum that exercised fact-finding authority. *Freeburg v. City of Seattle*, 71 Wn. App. 367, 859 P.2d 610 (1993).

■■ Landowners who wish to clear-cut their timber must agree to reforest under the conditions outlined in their Forest Practices Act permit. *See generally, DNR v. Marr*, 54 Wn. App. 589, 774 P.2d 1260 (1989) (discussing regulatory differences between a residential landowner cutting a few trees and a commercial logging use). Commercial logging is governed by the Forest Practices Act, RCW 76.09.010–.935, not by local land development ordinances pertaining to setbacks, buffer areas and the like. Therefore, as a check against a developer's clear-cutting property under the Forest Practices Act and then immediately seeking local approval for a different land use, local government is authorized by RCW 76.09.060(3)(b)(i) to impose a six-year building moratorium.[6]

■ The legislative purposes of the Forest Practices Act include protection of the environment, consideration of local land use planning, and intergovernmental cooperation. RCW 76.09.010(2). Construing RCW 76.09.030(3) in the context of this legislative intent, we conclude that it is self-executing. The Forest Practices Act directly grants lo-

---

[5]The County also notes that although Ordinance 150-1993 was indeed adopted after GUAVA received its permit, the Ordinance was adopted *before* GUAVA made its conversion request. The County contends that it can impose a building moratorium not only when a logging permit is issued but also when an application to convert the land use is filed. We do not address this argument because we conclude that RCW 76.09.060(3) is effective even without an enabling ordinance.

[6]*See* 20 Op. Att'y Gen. (Wash. 1992).

cal governments authority to impose RCW 76.09.030(3)(b) restrictions on land subject to a forest practices application if the application failed to say the land was to be converted. Local enabling legislation need not be adopted before local government may exercise this authority.

Our conclusion is consistent with the statutory analysis applied in *Polygon Corp. v. City of Seattle*, 90 Wn.2d 59, 578 P.2d 1309 (1978). Polygon Corporation challenged the Seattle local government's authority to deny a building permit because of adverse impacts identified under the State Environmental Policy Act (SEPA), RCW 43.21C.020. Polygon contended that SEPA was only "informational" and did not confer substantive authority to act. The Supreme Court ruled that such a reading would thwart SEPA's policies and nullify the provision that "environmental amenities and values will be given appropriate consideration in decision making." *Polygon*, 90 Wn.2d at 63 (quoting RCW 43.21C.030(2)(b)). The court concluded "[i]t necessarily follows that SEPA confers substantive authority to the deciding agency to act on the basis of the impacts disclosed." *Polygon*, 90 Wn.2d at 63.

Another case involving a self-executing statute held that property owners acquired no right to have their subdivision plans automatically approved merely because, when they filed a plat, the town had not adopted platting regulations as provided by RCW 58.16.110. *Jones v. Town of Woodway*, 70 Wn.2d 977, 425 P.2d 904 (1967). The court decided that it was evident from the statute that a platter must seek plat approval from town authorities. Thus, a town council had statutory authority to exercise discretion in the field of platting without adopting an ordinance. *Woodway*, 70 Wn.2d at 983.

GUAVA's arguments regarding a lack of notice and due process are without merit. GUAVA received actual notice of potential sanctions in February 1993 when it received its forest practices permit. The condition alerting GUAVA to the County's authority to impose a six-year moratorium on building development permits was clearly noted there-

on.[7] GUAVA does not raise, nor does the record disclose, any prejudicial error in the County's procedural handling of GUAVA's conversion application. We affirm.

HOUGHTON, C.J., and MORGAN, J., concur.

---

[7]We also infer from the record that Ord and GUAVA were already well acquainted with the County's policies. The transcript of the April 1994 Board of Commissioners Hearing contains the following passage:

"[Mr. Ord] is not the average citizen who bought five acres and made a mistake on his application. He has logged several dozen parcels and received these notices over the years, one after another. . . . Mr. Ord has filled out conversion statements by the DNR for conversion forest practices. We have those on file here. This is not a trap."

Testimony of Karanne Gonzales, Kitsap County Department of Community Development.