[No. 40076-2-I. Division One. November 17, 1997.]

NEIGHBORS OF BLACK NUGGET ROAD, *Appellant*, v.
KING COUNTY, ET AL., *Respondents*.

*J. Richard Aramburu* of *Law Offices of J. Richard Aramburu*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Michael J. Sinsky, Deputy*, for respondent King County.

*Thomas A. Goeltz, Katherine K. Laird*, and *Hall Baetz* of *Davis Wright Tremaine*, for respondents Grand Ridge Partnership, Glacier Ridge Partnership, and Sunset Interchange Foundation.

*Wayne D. Tanaka* of *Ogden Murphy Wallace, P.L.L.C.*; and *Andrew G. Cooley* of *Keating, Bucklin & McCormack, P.S.*, for respondent City of Issaquah.

Cox, J. — Neighbors of Black Nugget Road, a nonprofit corporation, challenges the validity of a King County ordinance that adopts a tri-party agreement and authorizes the King County executive to sign it. The agreement

deals with the annexation and development of Grand Ridge, which is located in east King County. Because the agreement does not approve development and the relevant part of Grand Ridge was annexed by the City of Issaquah, the "100-lot rule" embodied in the King County Road Standards ordinance does not control. Accordingly, we affirm.

In May 1996, the King County Council enacted Ordinance 12302. That ordinance adopted and authorized the County Executive to execute the Grand Ridge Joint Agreement and the Master Transportation Financing Agreement. Under the terms of the Grand Ridge Joint Agreement (Agreement), the County agreed to support annexation by the City of Issaquah of Grand Ridge, which is property to be developed by the Grand Ridge Limited Partnership. The City agreed not to seek annexation inconsistent with the terms of the Agreement. The Partnership agreed to develop Grand Ridge consistent with the terms of the Agreement.

In June 1996, the City of Issaquah annexed part of Grand Ridge. As a result of that annexation, portions of Black Nugget Road lie within the City and other portions remain within unincorporated King County.

The Agreement envisions phased development of Grand Ridge. Phase I construction will consist of either (a) 100 single-family residential units without improvement to Black Nugget Road or (b) final plat approval of 540 of such residential units. This latter alternative is conditioned on improvement of Black Nugget Road to meet King County neighborhood collector standards and other matters not relevant to this appeal.

Neighbors commenced this suit under the Land Use Petition Act.[1] The trial court granted King County's motion to dismiss Neighbors' petition on the grounds that the Agreement is neither a development agreement nor a project

[1]RCW 36.70C.

permit decision under RCW 36.70B and RCW 36.70C. Thus, the Agreement is not subject to review under the Act. Nevertheless, the court permitted Neighbors to amend its complaint to add the claims now before us.

Neighbors amended its complaint to seek a declaratory judgment invalidating Ordinance 12302. It claims that the ordinance is inconsistent with the "100-lot rule" set forth in the King County Road Standards. The trial court granted summary judgment to all the defendants on this claim. Neighbors appeals only this order.

## Summary Judgment

Neighbors essentially argues that King County Road Standards control development within the portion of Grand Ridge recently annexed by the City of Issaquah. We disagree.

■ When we review a summary judgment order, we undertake the same inquiry as the trial court.[2] We determine whether any genuine issues of material fact exist and if the moving party is entitled to judgment as a matter of law.[3] We consider all facts and reasonable inferences from facts in the light most favorable to the nonmoving party.[4] We review questions of law de novo.[5]

Neighbors correctly concedes that there are no genuine issues of material fact. Thus, we must decide whether the respondents are entitled to judgment as a matter of law.

In 1993, the County adopted Ordinance 11187, which amended section 2.20 of the King County Road Standards, to state that:

In order to provide a second access to a residential subdivi-

---

[2]*Mountain Park Homeowners Ass'n v. Tydings*, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994).

[3]CR 56(c).

[4]*Tydings*, 125 Wn.2d at 341.

[5]*Tydings*, 125 Wn.2d at 341.

sion, short subdivision, binding [sic] site plan or planned unit development, no residential street shall serve more than 100 lots or dwelling units unless the street is connected in at least two locations with another street that functions at a level consistent with Sections 2.02 and 2.03.

Neighbors refers to this law as the "100-lot rule" and contends that the Agreement is inconsistent with the rule. Specifically, Neighbors argues that the ordinance requires that the County limit the number of lots or dwelling units in Grand Ridge.[6]

■ King County, the City, and the Partnership respond with several arguments. They first argue that Ordinance 12302 is not inconsistent with the 100-lot rule because (a) the Agreement does not "approve development" and therefore the Road Standards do not apply to it and (b) the Road Standards do not apply to property annexed by the City. Second, they argue that we should apply canons of statutory construction to uphold the more recent and more specific ordinance that approves the tri-party agreement for Grand Ridge. We agree with the first of these two arguments and need not reach the second.

We do not read the Agreement to approve development. Rather, it expressly reserves to the City development permitting decisions. The Agreement states that upon successful annexation by the City "[Grand Ridge] *will be developed under the jurisdiction of the City* consistent with or exceeding the standards and service levels described in [the Agreement.]"[7] We reject Neighbors' argument that the Agreement should be read otherwise than as expressly stated in the previous sentence. The Agreement provides for approval of development by the City, not the County.

Based on the premise that the Agreement approves development, Neighbors argues that the King County

---

[6]Appellant's Opening Br. at 11.

[7](Emphasis added.)

Road Standards must apply to Grand Ridge. KCC 14.42-
.040 states that

> [a]ny land development which is required by operation of
> any county ordinance or adopted standard to improve roads
> within, abutting, or serving the development shall do so in
> accordance with these standards.

The term "standards" refers to the Road Standards.[8]
Because the land development that the Agreement antici-
pates has not yet been approved, the Road Standards do
not apply.

Because we resolve this issue on these grounds, we need
not reach King County's argument that the trial court
decided that the Agreement did not approve development
when it dismissed the Neighbors' land use petition.

The other argument that the respondents advance in
support of the summary judgment is that the County's
Road Standards do not apply to control development
within the boundaries of the City. We agree.

 The terms of King County Road Standards 2.20
and KCC 14.42.040 do not expressly state whether they
apply to developments in incorporated cities. Therefore,
we must construe the ordinances.[9] Ordinances are es-
sentially "local statutes" that we construe according to
the rules of statutory construction.[10] Thus, we construe or-
dinances to fulfill the intent of the legislative entity.[11] We
give considerable deference to the enforcing agency's in-
terpretation of an ambiguous ordinance.[12]

KCC 14.42.040 states that "[a]ny land development

---

[8]KCC 14.42.020(A).

[9]*See State ex rel. Royal v. Board of Yakima County Comm'rs*, 123 Wn.2d 451,
458-59, 869 P.2d 56 (1994).

[10]*City of Spokane v. Fischer*, 110 Wn.2d 541, 754 P.2d 1241 (1988); 6 EUGENE
McQUILLIN, MUNICIPAL CORPORATIONS § 20.39 (3D ed. rev. 1988).

[11]*See Perkins Coie v. Williams*, 84 Wn. App. 733, 736, 929 P.2d 1215, *review
denied*, 132 Wn.2d 1013 (1997).

[12]*Peter Schroeder Architects, AIA v. City of Bellevue*, 83 Wn. App. 188, 191,
920 P.2d 1216 (1996).

which is required by operation of any county ordinance or adopted standard to improve roads within, abutting, or serving the development shall do so in accordance with [the King County Road Standards]." King County Road Standard 2.20 states that "[i]n order to provide a second access to a residential subdivision, short subdivision, binding site plan or planned unit development, no residential street shall serve more than 100 lots . . . ."

As noted above, we generally accord deference to the enforcing agency's interpretation of an ambiguous ordinance.[13] Neighbors cites no relevant authority to dissuade us from following this rule in the case before us. Here, the enforcing agency has interpreted these provisions to apply only to development within unincorporated King County. The Interim Manager of the King County Road Services Division, Harold Taniguchi, stated in his affidavit that the Road Services Division does not interpret its road standards as having any application to development review taking place outside the County's unincorporated jurisdiction.

Neighbors argues that courts do not defer to "legal interpretations by inferior county officials such as the Roads Division . . . ." But the cases it cites for this proposition do not support it. In *Freeburg v. City of Seattle*[14] and *Ord v. Kitsap County*,[15] the courts addressed the standard of review under the writ of certiorari statute. That statute is not at issue here.

■ Neighbors points out that it is ultimately our responsibility to determine what the law is.[16] This is true. But it cites no relevant authority for the proposition that developments in incorporated cities are required to comply

[13]*Schroeder*, 83 Wn. App. at 191.

[14]71 Wn. App. 367, 371, 859 P.2d 610 (1993).

[15]84 Wn. App. 602, 606, 929 P.2d 1172 (1997).

[16]*Hoberg v. City of Bellevue*, 76 Wn. App. 357, 360, 884 P.2d 1339 (1994).

with the county road standards.[17] To the contrary, our Supreme Court has noted that upon annexation to a city or town, territory becomes subject to the laws and ordinances of the city.[18] We see no reason why this rationale does not apply here where the City has authority to approve development in the relevant area. Moreover, at least two code provisions refer to "development" as activity requiring County approval.[19] We hold that the King County Road Standards do not apply to development within the City.

■ For the first time in its reply brief, Neighbors argues that the Agreement, as a development agreement authorized by RCW 36.70B, must be consistent with certain development regulations. We do not consider this argument because it is raised for the first time in a reply brief.[20]

The County and the City make additional arguments in support of the trial court's decision. Because we affirm the summary judgment order on the grounds set forth above, we need not reach these arguments.

We affirm the summary judgment order.

AGID and ELLINGTON, JJ., concur.

Review denied at 135 Wn.2d 1003 (1998).

---

[17]*See Eastlake Community Council v. City of Seattle*, 64 Wn. App. 273, 282-83, 823 P.2d 1132, *review denied*, 119 Wn.2d 1005 (1992).

[18]*Hoops v. Burlington N., Inc.*, 83 Wn.2d 396, 401, 518 P.2d 707 (1974).

[19]KCC 21.04.291 ("Development proposal" means activities relating to development of land that requires permitting from King County); KCC 14.70.020(H) ("development" means various activities requiring a development permit from King County).

[20]*Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).