[Nos. 18139-1-III; 18154-5-III. Division Three. January 25, 2000.]

AUSTIN PAGNOTTA, *Appellant*, v. BEALL TRAILERS OF
OREGON, INC., ET AL., *Respondents*.

*Harry Everett Ries*, for appellant.

*James H. Gidley* of *Bogle & Gates*, for respondent Beall Trailers of Oregon, Inc.

30

*Scott Michael Barbara* and *Barry Meredith Johnson* of *Johnson & Martens*, for respondent Reyco Industries, Inc.

BROWN, J. — By summary judgment, the trial court dismissed Austin Pagnotta's negligence and product liability complaint against Beall Trailers and Beall's third-party complaint against Reyco Industries, a component part supplier of a trailer sold to Mr. Pagnotta's employer.[1] The trial court decided Mr. Pagnotta's experts were incompetent to rebut expert testimony favoring Beall and Reyco. We reverse because (1) Mr. Pagnotta's experts were competent to testify to the extent of their expertise, and (2) expert testimony is not required in a design defect products liability case to establish a defect under a consumer expectation standard.

## FACTS

On February 10, 1994, Mr. Pagnotta was hauling diesel fuel south from Spokane. He was pulling a Beall trailer sold in October 1993 that used suspension components supplied by Reyco. The road was dry, the weather was clear and cold, the road was straight. Mr. Pagnotta suddenly "felt . . . a tug, [as if] somebody had reached out and pulled on the trailer." Mr. Pagnotta tried to steer against the pull but he had no control. The trailer reportedly went off the road to the right pulling the tractor after it. Approaching and following drivers supported Mr. Pagnotta's account.

---

[1] The cases have been consolidated for purposes of this opinion. RAP 3.3(b).

Trooper Wayne Turner investigated. Trooper Turner's deposition revealed 13 years' experience investigating accidents. In response to an inquiry regarding his training in accident reconstruction, Trooper Turner acknowledged he was not an accident reconstructionist, but related his completion of basic and advanced training. Trooper Turner averaged 10 accident investigations a week. He saw maybe 30 to 40 truck accidents. Trooper Turner interviewed Carl Fisher, the approaching driver, and Doug Bippes, the following driver. Mr. Fisher said the trailer suddenly jerked to the right, then went off the road. Mr. Bippes said the trailer axle dropped off the highway to the right and then did a complete flip landing on the left side of the tractor and trailer. Trooper Turner called in a weight control officer to inspect and do a work-up on the truck. The weight control officer pointed to rust at break points indicating pre-accident partial breaks in the suspension parts. Trooper Turner indicated the underlying factual bases for his conclusions based upon his personal observations and his witness interviews. Trooper Turner concluded the back end of the trailer came out of alignment causing the trailer to leave the road without any fault on Mr. Pagnotta's part.

Gary Stebner also investigated the accident for Reliance Insurance Company, the insurer for Mr. Pagnotta's employer. At the time of his deposition, Mr. Stebner described himself as a regional examiner/consultant and material damage examiner for Reliance with responsibility for about two-thirds of the United States. While with Reliance, Mr. Stebner received numerous courses in investigation and material damage. Before his 12 years with Reliance, Mr. Stebner sold heavy equipment and trucks for 5 years, drove trucks for about 9 years, and received a technical arts degree as a certified civil engineering technician. Mr. Stebner worked for about three years in the mid-seventies as an engineering technician. Mr. Stebner concluded the claim had subrogation potential due to some kind of failure in the trailer's rear axle. Reliance asked Talbott Associates, Inc., an engineering firm, for its opinion. Talbott Associates

did not support Mr. Stebner's view. Reliance decided not to pursue subrogation.

Mr. Pagnotta sued Beall for his injuries, claiming product liability and negligence. Beall brought a third-party complaint against Reyco, the suspension manufacturer. Reyco moved for summary judgment against both Mr. Pagnotta and Beall.

Reyco submitted evidence from Scott Kimbrough, Ph.D. Dr. Kimbrough opined: "In my professional opinion, there is no evidence to suggest a defect in the suspension caused the accident at issue in this case. All of the relevant suspension system parts, . . . exhibit damage that was caused by forces generated during the roll-over accident. There is no evidence to suggest any of the relevant suspension system parts failed prior to the roll-over accident." Dr. Kimbrough further opined the leaf spring did not cause the accident by escaping from its proper position. Reyco also submitted Talbott Associates' reports.

In opposition to the summary judgment motion, Mr. Pagnotta offered the depositions of both Trooper Turner and Mr. Stebner. Mr. Stebner continued to believe that a defect caused the accident despite the contrary evidence:

> My opinion based on what I saw on the trailer, and a lot had to do with the eyewitnesses stating that they saw [an axle] come out, is that . . . something broke allowing the axle to exit . . . where I saw the tire marks come up from underneath the trailer causing the trailer axle to shift, which would pull it over to the side and pulling the truck out of control.

Mr. Pagnotta's declaration indicated he had been the sole driver of the trailer, all scheduled maintenance had been done, and no mechanical problems existed prior to the accident. Mr. Pagnotta observed no indication of trailer defects before the accident.

The trial court rejected Trooper Turner and Mr. Stebner as unqualified under ER 702. The court decided the context of a product liability case was "analogous or akin to those cases of medical malpractice." The court reasoned Mr. Pag-

notta failed to rebut the defendant's evidence by "producing a competent expert's affidavit alleging specific facts establishing the cause of action."

The trial court concluded the lay testimony consisted of conclusory contentions failing to raise any genuine issue of material fact. The trial court, without discussing the merits of the third-party complaint, granted summary judgment, dismissing both Mr. Pagnotta's complaint and Beall's derivative third-party complaint. Mr. Pagnotta appealed. Thirty-two days after Mr. Pagnotta's appeal, Beall filed its appeal of the court's dismissal of its third-party complaint.

## ANALYSIS
### A. Exclusion of Appellant's Experts

The issue is whether the trial court erred by abusing its discretion when deciding Trooper Turner and Mr. Stebner did not qualify to give opinions under the evidence rules in the context of this negligence and products liability case.

■ The decision whether to admit expert testimony is within the discretion of the trial court. *State v. Ortiz*, 119 Wn.2d 294, 310, 831 P.2d 1060 (1992). In medical negligence cases, special rules have been developed limiting the admission of expert testimony regarding the standard of care of a physician. *See Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 227-28, 770 P.2d 182 (1989). Generally, medical expert opinion is required to establish the standard of care and most aspects of causation. *Id.* at 228. However, the *Young* court also recognized that material facts could be within the expertise of a layman when they are observable by the layman's senses and describable without medical training. *Id.*

In *Young*, the court found a pharmacist incompetent to testify about the standard of care in a medical malpractice case. *Id.* at 230. Similarly, a medical doctor is incompetent to testify on the standard of care of a pharmacist. *McKee v. American Home Prods. Corp.*, 113 Wn.2d 701, 706-07, 782 P.2d 1045 (1989). These cases reflect the principle that

when causation involves "obscure medical facts" requiring an ordinary lay person to speculate, expert opinion is necessary. *Bruns v. PACCAR, Inc.*, 77 Wn. App. 201, 214, 890 P.2d 469, *review denied*, 126 Wn.2d 1025 (1995).

■ However, in ordinary negligence and products liability cases where obscure medical facts are not involved, traditional rules apply. "In general, an affidavit containing admissible expert opinion on an ultimate issue of fact is sufficient to create a genuine issue as to that fact, precluding summary judgment." *J.N. v. Bellingham Sch. Dist. No. 501*, 74 Wn. App. 49, 60-61, 871 P.2d 1106 (1994). An expert's affidavit submitted in opposition to a motion for summary judgment must be factually based and must affirmatively show competency to testify to the matters stated therein. *Lilly v. Lynch*, 88 Wn. App. 306, 320, 945 P.2d 727 (1997). An expert's factual basis may consist of information in the record or information not in the record but reasonably relied on by others in the field. *Riccobono v. Pierce County*, 92 Wn. App. 254, 267, 966 P.2d 327 (1998). "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." ER 702.

■ ■ A lay witness may testify as to his or her opinion under circumstances of personal knowledge based upon rational perceptions when it would help the jury understand the witnesses' testimony or a fact in issue. *Ortiz*, 119 Wn.2d at 308-09 (citing McCormick on Evidence 29 (Edward W. Cleary ed., 3d ed. 1984)); *see also* ER 701. Experts may at times give lay opinion evidence. *See Ortiz*, 119 Wn.2d at 309.

Here, Trooper Turner adequately described his expertise based upon his education, training and practical experience and gave the underlying facts supporting his ultimate conclusions. He may give opinions within the area of his expertise. Although not a professional engineer, Trooper Turner viewed most of the same items as Dr. Kimbrough, plus he was present at the scene and had direct personal

knowledge of critical facts supporting his opinion. His opinions would be partly helpful in the lay sense of ER 701 and in the expert sense under ER 702. The same is true for Mr. Stebner. The testimony of Trooper Turner and Mr. Stebner, within their respective areas of expertise, is relevant and likely helpful to the jury in deciding whether the trailer performed as expected. For example, neither needs to be a professional engineer or metallurgist to state an opinion that the trailer left the road prior to the tractor.

In sum, both Trooper Turner and Mr. Stebner have the education, training and experience giving them insights that are relevant and helpful to the jury under ER 701 and ER 702. Because this is not a medical malpractice case where obscure medical knowledge is required on causation or the standard of care, the trial court erred by choosing and applying medical malpractice law. Indeed, in their areas of expertise, Trooper Turner and Mr. Stebner likely have relevant and helpful opinions beyond the expertise of Dr. Kimbrough. The objections related to their qualifications merely go to the weight not the admissibility of the opinions.

## B. Summary Judgment

The issue is whether as a matter of law the trial court erred when granting summary judgment to the respondents and concluding expert testimony was required to establish the exact defect in a design defect products liability action.

When reviewing summary judgments under CR 56(c):

> We determine whether any genuine issues of material fact exist and if the moving party is entitled to judgment as a matter of law. We consider all facts and reasonable inferences from facts in the light most favorable to the nonmoving party. We review questions of law de novo.

*Neighbors of Black Nugget Rd. v. King County*, 88 Wn. App. 773, 776, 946 P.2d 1188 (1997) (footnotes omitted),

*review denied*, 135 Wn.2d 1003 (1998). The moving party bears the initial burden of showing the absence of an issue of fact. *Young*, 112 Wn.2d at 225. When the defendant, as moving party, meets this burden then the inquiry shifts to plaintiff. *Id.* "If, at this point, the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,' then the trial court should grant the motion." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

To rebut a properly supported summary judgment motion, the nonmoving party must present specific facts showing a genuine issue for trial. *Adams v. Western Host, Inc.*, 55 Wn. App. 601, 607, 779 P.2d 281 (1989). The nonmoving party's burden is not met by responding with conclusory allegations, speculative statements, or argumentative assertions. *Ruffer v. St. Frances Cabrini Hosp.*, 56 Wn. App. 625, 628, 784 P.2d 1288, *review denied*, 114 Wn.2d 1023 (1990). We will grant summary judgment when reasonable people could reach but one conclusion from the evidence. *Detweiler v. J.C. Penney Cas. Ins. Co.*, 110 Wn.2d 99, 108, 751 P.2d 282 (1988).

The elements of proof for a design defect products liability claim require a showing of (1) a manufacturer's product (2) not reasonably safe as designed (3) causing harm to the plaintiff. RCW 7.72.030(1); *Bruns*, 77 Wn. App. at 208.

██ ██ The second element requires a showing that the product was not reasonably safe as designed. *Id.* at 209. This may be tested by either a risk utility or a consumer expectation standard. *See Soproni v. Polygon Apartment Partners*, 137 Wn.2d 319, 326-27, 971 P.2d 500 (1999). Mr. Pagnotta relies on the consumer expectation standard. Accordingly, he must prove the truck was more dangerous than the ordinary consumer would expect. *See Anderson v. Weslo, Inc.*, 79 Wn. App. 829, 837, 906 P.2d 336 (1995). Relevant considerations include "[t]he relative cost

of the product, the gravity of the potential harm from the claimed defect and the cost and feasibility of eliminating or minimizing the risk may be relevant in a particular case." *Seattle-First Nat'l Bank v. Tabert*, 86 Wn.2d 145, 154, 542 P.2d 774 (1975). "If a product is unreasonably dangerous, it is necessarily defective." *Tabert*, 86 Wn.2d at 154.

 The strict liability doctrine does not impose legal responsibility simply because a product causes harm. *Id.* at 150. Nonetheless, Washington courts recognize certain situations exist where the type of accident itself may establish a defect using a consumer's expectation test:

> In the type of case in which there is no evidence, direct or circumstantial, available to prove exactly what sort of manufacturing flaw existed, or exactly how the design was deficient, the plaintiff may nonetheless be able to establish his right to recover, by proving that the product did not perform in keeping with the reasonable expectations of the user. When it is shown that a product failed to meet the reasonable expectations of the user the inference is that there was some sort of defect, a precise definition of which is unnecessary. If the product failed under conditions concerning which an average consumer of that product could have fairly definite expectations, then the jury would have a basis for making an informed judgment upon the existence of a defect.

*Bombardi v. Pochel's Appliance & TV Co.*, 10 Wn. App. 243, 247, 518 P.2d 202 (1973) (quoting *Heaton v. Ford Motor Co.*, 248 Or. 467, 471-72, 435 P.2d 806, 808 (1967)), *review denied*, 83 Wn.2d 1009 (1974); *accord Potter v. Van Waters & Rogers, Inc.*, 19 Wn. App. 746, 755-56, 578 P.2d 859 (1978) (nonexpert circumstantial evidence may be admitted to prove defective product).

 Mr. Pagnotta, relying on *Potter* and the consumer expectation standard, correctly argues he did not need to offer expert testimony of the exact flaw to maintain his products liability action. In *Potter*, the plaintiff sued for injuries sustained in a fall allegedly caused by a defective rope, and the trial court granted the defendant's motion

for summary judgment. *Potter,* 19 Wn. App. at 747-48. On appeal, the court remanded for trial. *Id.* at 758. Although the plaintiff apparently provided an expert witness, *id.* at 754, the court adopted the reasoning of Oregon courts that expert testimony is not always required to establish a defect:

> Although expert testimony can usually be a valuable assistance to the court and to the jury in products liability cases, it is not always an indispensable element of plaintiff's case. In *Brownell v. White Motor Corp.*, 260 Or 251, 490 P2d 184, 51 ALR3d 1 (1971), [the] court held that the trial court correctly denied defendants' motion for a directed verdict even though plaintiff presented no expert testimony of any defect.

*Id.* at 757 (quoting *Lynd v. Rockwell Mfg. Co.*, 276 Or. 341, 348-49, 554 P.2d 1000, 1004-05 (1976)).

The *Potter* court favorably cited *Brownell*, a tire blowout case, which is also instructive. There, the plaintiff did not offer expert testimony even though the defense expert found no defect. *Brownell v. White Motor Corp.*, 260 Or. 251, 254, 490 P.2d 184, 185, 51 A.L.R. 3D 1 (1971). On appeal, the defendants contended the trial court erred in not finding for them as a matter of law because there was insufficient evidence of any defect in the truck. *Id.* The court held the trial court correctly denied the defendant's motion for a directed verdict by reasoning the plaintiff's evidence negated driver negligence as a cause of the vehicle leaving the road. *Id.* at 186, 187. The court reasoned this evidence created the inference that a defect caused the incident. *Id.* at 186. The court concluded:

> When the jury reasonably can find that the product is unchanged from the condition it was in when sold and the unusual behavior of the product is not due to any conduct on the part of the plaintiff or anyone else who has a connection with the product, logic dictates that it is a distinct possibility that there is some defect in the product.

*Brownell*, 260 Or. at 258, 490 P.2d at 187.

Beall and Reyco give misplaced emphases to *Bruns* and similar cases. True, the *Bruns* court stated that a plaintiff

must offer "reliable and specific expert testimony to establish the nature of the alleged dangerous condition in a products liability case." *Bruns*, 77 Wn. App. at 210 (citing *Wagner v. Flightcraft, Inc.*, 31 Wn. App. 558, 643 P.2d 906, *review denied*, 97 Wn.2d 1037 (1982)). But a close reading of *Bruns* shows it is distinguishable because this comment regarded an issue requiring testimony about obscure medical facts related to multiple airborne chemicals and their effect in the cab of a truck. Moreover, the *Wagner* court cites back to *Potter* regarding the rules for expert testimony, and it follows the consumer expectation test. *Wagner*, 31 Wn. App. at 564.

In short, we conclude the consumer expectation rule applies here to avoid summary judgment as expert testimony of the exact defect is not required as a matter of law. We believe the rules in *Bruns* and *Wagner* are consistent with those stated in *Potter* regarding the need for expert testimony in the present case. A juror does not need to fully know through expert testimony how a trailer suspension is designed or exactly operates to understand the alleged defect. As we held in Part "A", *supra*, the trial court improperly analogized to medical malpractice cases when it ruled Mr. Pagnotta had not rebutted Beall's expert testimony. Trooper Turner and Mr. Stebner are both qualified to discuss the trailer's operation under the conditions here, as well as normal operating requirements.

## C. Dismissal of Third Party Complaint

The issue is whether the trial court erred by granting summary judgment dismissing Beall's third-party complaint against Reyco under the circumstances presented here.

Reyco preliminarily argues Beall was untimely filing its appeal of the trial court's order dismissing the third-party complaint because it was filed 32 days after the court's order and not within the 30-day deadline of RAP 5.2(a). RAP 5.2(f) provides in part: "If a timely notice of

appeal or a timely notice for discretionary review is filed by a party, any other party who wants relief from the decision must file a notice of appeal or notice for discretionary review with the trial court clerk within . . . 14 days after service of the notice filed by the other party . . . ." Even though Beall's appeal challenges a ruling other than that involved in Mr. Pagnotta's appeal, it is still part of the same "decision" for the purpose of RAP 5.2(f). *See Ed Nowogroski Ins., Inc. v. Rucker*, 88 Wn. App. 350, 361, 944 P.2d 1093 (1997), *aff'd*, 137 Wn.2d 427 (1999). Thus, Beall's appeal was timely under RAP 5.2(f) because it was made within 14 days of Mr. Pagnotta's appeal.

Furthermore, at oral argument the parties focused exclusively on whether Mr. Pagnotta presented sufficient evidence of a defect to create an issue of fact. The parties did not argue the summary judgment merits of the third-party complaint. Moreover, the trial court proceeded as though its ruling on the expert/defect issue preempted any discussion of the third-party complaint. Thus, it did not reach the issue presented here. Generally, we do not address issues not decided by the trial court. RAP 2.5(a). Accordingly, we reverse the order granting summary judgment to Reyco on the third-party complaint.

## CONCLUSION

We hold the trial court erred by granting summary judgment of dismissal of Mr. Pagnotta's products liability complaint and Beall's third-party complaint.

Reversed.

Kurtz, C.J., and Kato, J., concur.