IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| GREGORY PAULSON and TERESA PAULSON, husband and wife and the marital community comprised thereof, | ) ) ) | No. 82478-3-I |
| | ) | DIVISION ONE |
| Appellants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STI TIRES and WHEELS, L.L.C., a foreign limited liability company, | ) ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent, | ) | |
| | ) | |
| MTA DISTRIBUTING, L.L.C., a Delaware limited liability company, | ) ) | |
| | ) | |
| Defendant. | ) | |

BOWMAN, J. — Gregory and Teresa Paulson appeal the trial court's summary judgment order dismissing their Washington product liability act (WPLA), chapter 7.72 RCW, lawsuit alleging STI Tires and Wheels LLC (STI) manufactured a defective utility terrain vehicle (UTV) wheel. Because the Paulsons offer no competent evidence of a manufacturing defect, we affirm.

FACTS

In February 2016, Gregory[1] bought new STI brand HD5 bead lock wheels and tires for his UTV. He installed the new wheels himself the next day. He then set off for a two-day trip to Moses Lake, Washington, to off-road in the UTV.

---

[1] We refer to Gregory Paulson and Teresa Paulson by their first names when necessary for clarity. We intend no disrespect.

Citations and pin cites are based on the Westlaw online version of the cited material.

Gregory drove the UTV and experienced no issues his first day in Moses Lake. But on the second day, the UTV's right rear wheel broke at the hub, causing the wheel to fly off. The UTV rolled over two or three times, injuring Gregory.

The Paulsons sued STI under the WPLA,[2] alleging that a manufacturing defect in the wheel caused the crash. Gregory sought damages for medical bills, pain and suffering, and lost wages. Teresa sought damages for loss of consortium, including the care, comfort, and support of her husband.

STI moved for summary judgment. It argued that the Paulsons offered no evidence of a manufacturing defect. In response, the Paulsons submitted a declaration from professional engineer Michael York.

York said that he inspected the UTV, the right rear wheel that broke, and the left rear wheel. York's examination of the right wheel revealed "numerous cracks that should not be present[,] which indicate failure by low cycle fatigue and overload fracture." Based on the location of the cracks "at the outer ends of the spokes and at the inner ends adjacent to the wheel hub," York believed that "the strength of the alloy was compromised which led to fractures." York also observed two cracks in the left rear wheel.

York rejected the possibility that loosening or improper installation of the lug nuts caused the wheel failure because his inspection showed that the failure occurred at the outer ends of the spokes, opposite the lug nuts. He also rejected

---

[2] The Paulsons also sued the wheel distributor, MTA Distributing LLC. The trial court granted summary judgment for MTA. The Paulsons do not appeal that order.

2

that a drivetrain malfunction caused the failure because the UTV was in good condition and Gregory reported no drivetrain issues or crashes.

According to York, there was no evidence of a collision forceful enough to fracture the wheels,[3] so there was no explanation, "other than a manufacturing defect," for "the wheel to crack and ultimately fail." He concluded his observations "more than likely" showed "there was a problem in the wheel casting process and heat treatment by the manufacturer."

STI responded with a declaration from its own professional engineer, Sam Dastmalchi. He reviewed York's October 2018 chemical composition analysis of the wheel and York's notes showing hardness testing results. According to Dastmalchi, "hardness testing is the most common method of certifying that a casting was heat treated properly and in accordance with industry specifications." York's analysis showed that the wheel was manufactured from A356-T6 aluminum casting alloy, and his notes showed that several hardness tests on a segment of the fractured casting produced values within "an industry-accepted" range.

Dastmalchi asked York to repeat the testing in his presence, so in September 2019, the two attended a "joint examination and destructive testing" session. At the joint examination, Dastmalchi inspected the right rear wheel and agreed with York's analysis that it was cast from A356-T6 aluminum alloy. Dastmalchi then observed York repeat hardness testing on the wheel. The testing again showed that "the casting material met the industry specification

_____

[3] York did not observe any evidence of an impact on the right wheel or tire, and he noted that Gregory did not report hitting any hard object.

minimum hardness value."[4]  Based on York's first test results and the second joint test of alloy composition and hardness, Dastmalchi concluded the casting was properly heat treated and there was no issue with the strength of the alloy when it left STI's control.

The court granted summary judgment for STI.  It determined that the Paulsons did not present "competent evidence in support of their theory that a manufacturing defect in the wheel caused the crack and failure at issue."

The Paulsons appeal.

ANALYSIS

The Paulsons argue that the trial court erred by dismissing their lawsuit because York's opinion satisfied their burden to show a manufacturing defect. They contend Dastmalchi's contrary conclusion merely raises a genuine issue of material fact that a jury must resolve at trial.  STI asserts the trial court properly granted summary judgment in its favor because the undisputed facts showed no competent evidence of a manufacturing defect.  We agree with STI.

Summary Judgment Standard of Review

We review rulings on summary judgment de novo, performing the same inquiry as the trial court.  Kruse v. Hemp, 121 Wn.2d 715, 722, 853 P.2d 1373 (1993).  Summary judgment is appropriate only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  CR 56(c).  The moving party bears the burden of proving that there is no genuine issue as to any material fact.  Lamon v. McDonnell Douglas Corp., 91

---

[4] The specific results of the second hardness test are not in the appellate record.

Wn.2d 345, 349, 588 P.2d 1346 (1979). We consider all facts submitted and draw all reasonable inferences from those facts in the light most favorable to the nonmoving party. Ellis v. City of Seattle, 142 Wn.2d 450, 458, 13 P.3d 1065 (2000).

A defendant may move for summary judgment by showing the plaintiff lacks competent evidence to support an essential element of its case. Guile v. Ballard Cmty. Hosp., 70 Wn. App. 18, 21, 851 P.2d 689 (1993). If the defendant makes this showing, the burden shifts to the plaintiff to establish the existence of the essential element. Pagnotta v. Beall Trailers of Oregon, Inc., 99 Wn. App. 28, 36, 991 P.2d 728 (2000). The plaintiff must present specific facts showing a genuine issue for trial—conclusory allegations, speculative statements, or argumentative assertions do not satisfy the plaintiff's burden. Pagnotta, 99 Wn. App. at 36. If the plaintiff fails to meet its burden, summary judgment for the defendant is proper. Knight v. Dep't of Labor & Indus., 181 Wn. App. 788, 795-96, 321 P.3d 1275 (2014).

WPLA

The WPLA imposes "strict liability on any manufacturer of a defective product for resulting injuries." Garza v. McCain Foods, Inc., 124 Wn. App. 908, 916, 103 P.3d 848 (2004). A product manufacturer is subject to strict liability "if the claimant's harm was proximately caused by the fact that the product was not reasonably safe in construction." RCW 7.72.030(2).

> A product is not reasonably safe in construction if, when the product left the control of the manufacturer, the product deviated in some material way from the design specifications or performance

5

standards of the manufacturer, or deviated in some material way from otherwise identical units of the same product line.

RCW 7.72.030(2)(a).  In determining whether a product was not reasonably safe in construction, the trier of fact must consider whether the product was unsafe to an extent beyond what an ordinary customer would contemplate.  RCW 7.72.030(3).  The trier of fact may consider evidence of custom in the product seller's industry, or that the product did or did not comply with nongovernmental standards relating to design, construction, or performance of the product.  RCW 7.72.050(1).

Expert Testimony

STI argues that the Paulsons did not meet their burden of presenting specific facts showing a genuine issue for trial because (1) York did not express his opinion "to the required standard of probability," (2) his opinion amounts to "only speculation," and (3) his conclusion that a manufacturing defect exists "defies the uncontroverted evidence."[5]  While we disagree with STI's first and second arguments, we agree with the third.

(1)  Standard of Probability

STI argues that York's opinions cannot survive summary judgment because he did not offer them "on a more-probable-than-not basis" and they "lacked the necessary assurance of probability."

---

[5] The Paulsons argue that STI waived any challenge to deficiencies in York's declaration by not moving to strike it.  They rely on Lamon.  But that case involved a challenge to the admissibility of a declaration under CR 56(e) based on an engineer's personal knowledge. Lamon, 91 Wn.2d at 352.  STI does not challenge the admissibility of York's declaration.  Instead, it argues that York's opinion, while admissible, does not meet the plaintiff's burden of proof.

In support of its argument, STI cites State v. Shepherd, 110 Wn. App. 544, 551, 41 P.3d 1235 (2002); Fabrique v. Choice Hotels International, Inc., 144 Wn. App. 675, 687, 183 P.3d 1118 (2008); Reese v. Stroh, 128 Wn.2d 300, 309, 907 P.2d 282 (1995); Ugolini v. States Marine Lines, 71 Wn.2d 404, 407, 429 P.2d 213 (1967); and Orcutt v. Spokane County, 58 Wn.2d 846, 853, 364 P.2d 1102 (1961). But each of those cases involved expert medical opinions. And "a level of medical certainty is required" for expert medical opinions because of the "legal consequences that attach to these scientific opinions." Shepherd, 110 Wn. App. at 551.

Here, the admissibility of York's nonmedical opinion is subject to general evidentiary standards. See Ensley v. Costco Wholesale Corp., 1 Wn. App. 2d 856, 856, 407 P.3d 373 (2017) (citing ER 702). Once the court is satisfied with the witness' expertise, the opinion is admissible if it will assist the trier of fact to understand the evidence or determine a fact in issue. Ensley, 1 Wn. App. 2d at 856; ER 702. To assist the trier of fact, the expert must be able to express the opinion as a " 'reasonable probability rather than mere conjecture or speculation.' " Ensley, 1 Wn. App. 2d at 856-57[6] (quoting 5A KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICES § 291 (2d ed. 1982)); Davidson v. Mun. of Metro. Seattle, 43 Wn. App. 569, 571, 719 P.2d 569 (1986).

In his declaration, York concludes that in his "professional opinion," the wheel "had a defect when it left the manufacturer," and that physical evidence "more than likely indicates there was a problem in the wheel casting process and

---

[6] Internal quotation marks omitted.

heat treatment by the manufacturer." York expressed his opinion as a reasonable probability.

(2)  Speculation

STI also argues that York's opinion cannot defeat summary judgment because it "provides only speculation and conclusions with no factual support."

An expert's opinion submitted in opposition to a motion for summary judgment must stem from fact.  CR 56(e); Lilly v. Lynch, 88 Wn. App. 306, 320, 945 P.2d 727 (1997).  It cannot simply be a conclusion or based on assumption because unreliable testimony does not help the trier of fact.  Lilly, 88 Wn. App. at 320; Lakey v. Puget Sound Energy, Inc., 176 Wn.2d 909, 918, 296 P.3d 960 (2013).  So we focus our analysis on whether the expert's basis for forming the opinion is speculative, not on the expert's conclusions.  Volk v. DeMeerleer, 187 Wn.2d 241, 277, 386 P.3d 254 (2016).  When an expert fails to ground his opinion on facts, the testimony is too speculative and thus inadmissible.  See, e.g., Moore v. Hagge, 158 Wn. App. 137, 156-57, 241 P.3d 787 (2010); State v. Johnson, 150 Wn. App. 663, 675-76, 208 P.3d 1265 (2009); State v. Lewis, 141 Wn. App. 367, 389, 166 P.3d 786 (2007).

York grounded his opinion on facts he observed while examining the UTV wheels.  York saw "numerous cracks that should not be present in the [rear right] wheel."  He noted the location of fractures "developing at the outer ends of the spokes and at the inner ends adjacent to the wheel hub."  And he saw two cracks in the left rear wheel.  Those observations of fact, combined with the lack of evidence showing other causes, supported York's opinion that there was a

problem in the wheel casting process and heat treatment by the manufacturer. His opinion stemmed from more than mere speculation.

### (3) Evidence of Manufacturing Defect

Finally, STI contends that summary judgment was appropriate because "uncontroverted" hardness testing showed that no manufacturing defect existed. We agree.

In general, summary judgment is not appropriate when experts offer competing, apparently competent evidence. C.L. v. Dep't of Soc. & Health Servs., 200 Wn. App. 189, 200, 402 P.3d 346 (2017). That is because resolving competing opinions involves a credibility determination best left to the finder of fact. Larson v. Nelson, 118 Wn. App. 797, 810, 77 P.3d 671 (2003). But we may decide factual questions as a matter of law if reasonable minds can reach but one conclusion. Allen v. State, 118 Wn.2d 753, 760, 826 P.2d 200 (1992).

Here, based on his inspection of the wheels and information from Gregory, York concluded that STI's wheel casting and heat treatment processes caused a hardness defect in the right rear wheel.[7] But Dastmalchi's testimony disproved York's theory. Dastmalchi explained that "hardness testing is the most common method of certifying that a casting was heat treated properly and in accordance with industry specifications." York's individual analysis and the subsequent joint testing both uniformly showed that the hardness value of the wheel met industry

---

[7] Citing Miller v. Likens, 109 Wn. App. 140, 149, 34 P.3d 835 (2001), STI argues that York could not rely on Gregory's statements because Washington courts consistently disallow expert testimony that merely repeats as expert opinion the disputed statements or conclusions of lay witnesses. But York's opinion did not rest on only Gregory's statements. He also relied on his physical examination of the wheels.

standards. York did not dispute Dastmalchi's testimony, the adequacy of the testing process, or the accuracy of the results. Nor did he explain how his theory could hold true in the face of undisputed objective testing to the contrary. As a result, reasonable minds could reach but one conclusion—the manufacturer's casting and heat treatment processes hardened the wheel sufficient to meet industry standards when it left STI's control. The trial court did not err in granting summary judgment for STI.[8]

We affirm.

_____

WE CONCUR:

_____          _____

---

[8] STI requests an award of costs incurred on appeal under RAP 14.2. Because STI is the prevailing party on appeal, we award STI its costs on compliance with RAP 14.4.