IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| KAREN HARDER, individually, and on behalf of the ESTATE OF DAVID HARDER; and RACHEL HARDER, individually, | No. 85812-2-I |
| Appellants, | |
| v. | |
| CITY OF SEATTLE, a subdivision of the State of Washington d/b/a SEATTLE POLICE DEPARTMENT, | UNPUBLISHED OPINION |
| Respondents, | |
| PAYTON MADDY, an individual, | |
| Defendant. | |

BOWMAN, J. — Karen Harder, individually and on behalf of the estate of David Harder, and Rachel Harder (collectively Estate) appeal the trial court's grant of summary judgment for the city of Seattle and the Seattle Police Department (SPD) (collectively City) on the Estate's claims of negligence, wrongful death, and loss of consortium. The Estate alleged that SPD Officer Robert Stevenson violated SPD policy in pursuing Payton Maddy, causing Maddy to drive erratically and kill David.[1] But because the Estate cannot show

---

[1] We refer to the individual members of the Harder family by their first names when necessary for clarity and mean no disrespect by doing so.

that Officer Stevenson's actions were a proximate cause of David's death, we affirm.

FACTS

On the morning of May 20, 2020, Officer Stevenson was patrolling in North Seattle when he saw a car parked in a stall at the Brown Bear Car Wash at the corner of 15th Avenue NE and NE 125th Street. The driver was not washing or detailing his car. Officer Stevenson believed the car wash was "a nest for criminal activity" and "a hangout for nefarious characters." So, he pulled into the parking lot to get a better view of the car. As he circled the lot, Officer Stevenson noticed that the car did not have a rear license plate and that the temporary tag was expired.

Officer Stevenson then left the property and parked a block away in a position where he could see the entire lot. As he was leaving, Officer Stevenson saw the driver, later identified as Maddy, notice him and "get nervous." Shortly after parking, Officer Stevenson observed Maddy drive out of the lot and head north on 15th Avenue NE. Officer Stevenson followed Maddy. Over the next minute and a half, Maddy drove erratically through the neighborhood northwest of the car wash, with Officer Stevenson trailing him, until Maddy crashed into David's motorcycle, killing him.

The red line in the picture below shows Maddy's path through the neighborhood during the minute and a half from when he left the car wash parking lot until he hit David's motorcycle.

2



Google Earth image showing Payton Maddy's approximate travel path.

As shown, Maddy left the car wash and headed east on NE 125th Street. He then turned north onto 15th Avenue NE but quickly cut across the road into a Chevron gas station parking lot. He drove through the lot and exited the gas station onto NE 125th Street westbound "at a high rate of speed, without stopping," and cut off another car. Officer Stevenson followed Maddy, heading north on 15th Avenue NE and making a U-turn to stay with him as Maddy cut through the gas station and continued on NE 125th Street. Officer Stevenson saw Maddy turn north onto 14th Avenue NE and activated his emergency lights, intending to stop him for driving with expired tabs and reckless driving.

Maddy accelerated north on 14th Avenue NE toward NE 127th Street. When Officer Stevenson turned onto 14th Avenue NE, he saw that "Maddy had put over [a half] block" on him and continued "accelerating and pulling away" from him. Believing Maddy was eluding, Officer Stevenson drove about 100 yards north on 14th Avenue NE before deactivating his emergency lights[2] and broadcasting by radio to other officers that he was "return[ing] to routine driving" and "not in a pursuit." Even so, he continued following Maddy "in a routine manner in an effort to keep a visual on him."

Maddy made a left turn westbound on NE 127th Street, then a right turn northbound on 12th Avenue NE, and then another right turn eastbound on NE 130th Street. Officer Stevenson followed, expecting that "Maddy would ditch the vehicle and go to ground." Officer Stevenson explained that people who elude police often leave the car and flee on foot. But at the intersection of NE 130th Street and 15th Avenue NE, Maddy ran a stop sign and attempted a left turn northbound onto 15th Avenue NE. Cutting across oncoming southbound traffic on 15th Avenue NE, Maddy struck David's motorcycle. David died as a result of his injuries from the crash.[3]

In February 2022, the Estate[4] sued the City and Maddy, alleging negligence, wrongful death, and loss of consortium. In August 2023, the City

---

[2] Officer Stevenson never activated his sirens.

[3] Maddy later pleaded guilty to hit and run resulting in death and vehicular homicide. He received a 120-month sentence.

[4] Karen is David's spouse and Rachel is his daughter.

moved for summary judgment. It argued that the Estate cannot show Officer Stevenson was negligent because "there is no evidence that Officer Stevenson 'pursued' Maddy, and no evidence that he failed to exercise due regard for the safety of all persons." The City also argued that the Estate cannot establish Officer Stevenson's actions were a proximate cause of the collision. It contended that Officer Stevenson's actions could not have caused Maddy to drive recklessly because Maddy's own statements established he did not see Officer Stevenson following him.

With its motion, the City submitted the declaration of its expert, Nathan Rose, an accident reconstructionist. Rose created an animation video with a reconstruction of the route Maddy and Officer Stevenson drove before the collision. And the City submitted testimony from Officer Stevenson that when he thought Maddy was fleeing, he did not pursue and, instead, deactivated his emergency lights and resumed "routine driving." The City also submitted testimony from SPD Assistant Chief Thomas Mahaffey, the bureau chief over patrol operations, that "based on the distance," it was clear Officer Stevenson stopped pursuit of Maddy when he saw Maddy accelerating away from his attempted traffic stop.

The City also provided a declaration from its expert Dr. Steven Arndt, a human factors scientist, who testified that Maddy had about five seconds in which he could have seen Officer Stevenson trying to make a traffic stop with his lights activated, and that once Maddy turned onto NE 127th Street, "there would

be no opportunity to see the activated lights," which was about 34 seconds before the collision. And the City submitted a report summary from Dr. Jeremy Bauer, an accident reconstruction expert, showing that while Officer Stevenson was following Maddy, there were only four brief moments where Maddy could have seen him before Maddy turned onto NE 130th Street from 12th Avenue NE. Finally, the City submitted transcripts from the arresting officer's body camera footage and Maddy's later deposition testimony in which Maddy states several times that he did not know Officer Stevenson tried to stop him and that he did not see a police car following him at any point.

The Estate opposed the City's motion. It argued that the evidence showed Officer Stevenson failed to act with due regard for the safety of others by continuing to pursue Maddy. It further argued that Officer Stevenson's conduct was a proximate cause of the collision because Maddy's erratic driving shows that he was fleeing from Officer Stevenson, and that Maddy's statement that he did not see Officer Stevenson is not credible. The Estate also submitted testimony from SPD Captain George Davisson that Maddy was likely eluding. And it submitted a declaration and expert report from Russ Hicks, a retired law enforcement officer and police academy supervisor and trainer, in which Hicks states that after Officer Stevenson saw Maddy was eluding, he continued to pursue Maddy in violation of SPD policy.

On September 8, 2023, the trial court heard the City's summary judgment motion. After hearing argument from both parties, the court reserved ruling on

the matter. A few days later on September 14, the court granted the City's motion and dismissed all claims against the City. The court explained that Officer Stevenson's actions were not a proximate cause of David's death because Maddy testified that he never saw Officer Stevenson. But even assuming Maddy saw Officer Stevenson pursuing him, the court concluded Officer Stevenson "broke off his chase at least two blocks and several turns before [Maddy] ran the stop sign and killed [David]," so his conduct was too remote to amount to a proximate cause of David's death.

The Estate then moved for certification of the court's order on summary judgment under CR 54(b) and a stay of the proceedings against Maddy. The City did not oppose the motion, and the court granted certification and a stay.

The Estate appeals.

ANALYSIS

The Estate argues that the trial court erred by granting the City summary judgment because specific facts show that Officer Stevenson breached his duty of care and that the breach was a proximate cause of David's death.

We review rulings on summary judgment de novo, performing the same inquiry as the trial court. *Kruse v. Hemp*, 121 Wn.2d 715, 722, 853 P.2d 1373 (1993). Summary judgment is appropriate only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." CR 56(c). The moving party bears the burden of proving that there is no genuine issue as to any material fact. *Lamon v. McDonnell Douglas Corp.*, 91 Wn.2d 345, 349, 588 P.2d 1346 (1979). We consider all facts and reasonable

inferences from those facts in the light most favorable to the nonmoving party. *Ellis v. City of Seattle*, 142 Wn.2d 450, 458, 13 P.3d 1065 (2000).

A defendant may move for summary judgment by showing the plaintiff lacks competent evidence to support an element of its case. *Guile v. Ballard Cmty. Hosp.*, 70 Wn. App. 18, 21, 851 P.2d 689 (1993). If the defendant makes this showing, the burden shifts to the plaintiff to establish the existence of the element. *Pagnotta v. Beall Trailers of Or., Inc.*, 99 Wn. App. 28, 36, 991 P.2d 728 (2000). The plaintiff must present specific facts showing a genuine issue for trial; conclusory allegations, speculative statements, or argumentative assertions are not enough. *Id.* If the plaintiff fails to meet its burden, summary judgment for the defendant is proper. *Knight v. Dep't of Lab. & Indus.*, 181 Wn. App. 788, 795-96, 321 P.3d 1275 (2014).

To prevail on a negligence claim, a plaintiff must prove (1) the existence of a duty owed, (2) breach of that duty, (3) resulting injury, and (4) proximate cause. *Ranger Ins. Co. v. Pierce County*, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). If the plaintiff cannot establish all four elements as a matter of law, summary judgment for the defendant is proper. *Id.*

1. Duty of Care

The Estate argues that the City owed a duty of care to protect others from harm under the "overarching common law duty of law enforcement officers" and RCW 46.61.035. We agree.

"Liability in tort for negligence may lie only where the defendant owes the plaintiff a duty of care." *HBH v. State,* 197 Wn. App. 77, 86, 387 P.3d 1093 (2016). A duty of care can arise from common law principles or legislative enactment. *Schneider v. Strifert*, 77 Wn. App. 58, 61, 888 P.2d 1244 (1995). The existence of a duty is a question of law. *Schooley v. Pinch's Deli Mkt., Inc.*, 134 Wn.2d 468, 474, 951 P.2d 749 (1998).

Under common law, every individual, including law enforcement officers, owes " 'a duty of reasonable care to refrain from causing foreseeable harm in interactions with others.' " *Mancini v. City of Tacoma*, 196 Wn.2d 864, 879, 479 P.3d 656 (2021) (quoting *Beltran-Serrano v. City of Tacoma*, 193 Wn.2d 537, 550, 442 P.3d 608 (2019)). And our legislature affirmed that this duty of care applies even when law enforcement officers are acting in an emergency capacity under RCW 46.61.035. There, drivers of "authorized emergency vehicle[s]" in "the pursuit of an actual or suspected violator of the law" may "[e]xceed the maximum speed limits so long as [they do] not endanger life or property." RCW 46.61.035(1), (2)(c). But the statute does not "relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons" or "protect the driver from the consequences of [their] reckless disregard for the safety of others." RCW 46.61.035(4).

As a result, Officer Stevenson had a duty to drive his patrol car with reasonable care to prevent foreseeable harm to others even if he was engaged in a pursuit.

2. <u>Breach</u>

The Estate argues it raised a question of fact as to whether Officer Stevenson breached his duty. It points to Hicks' testimony that Officer Stevenson failed to break off pursuit in violation of SPD's policy. We agree.

Whether a party breached a duty of care is generally a fact question. *Hertog ex rel. S.A.H. v. City of Seattle*, 138 Wn.2d 265, 275, 979 P.2d 400 (1999). Violation of an adopted policy that sets a standard of care to be followed by employees may be considered as evidence of negligence. *See HBH*, 197 Wn. App. at 92.

Under SPD policy 13.031(4), an officer may not pursue an eluding vehicle without an "articulable justification that the public safety need to stop the eluding vehicle outweighs the inherent risk of pursuit driving." And an officer cannot initiate pursuit solely for traffic violations, misdemeanors, property crimes, or the act of eluding alone. Under SPD policy 13.031(1), "eluding" exists when

> an officer operating an authorized police vehicle issues by hand, voice, emergency lights or siren a visual and/or audible signal to the driver of a vehicle to stop and, after a reasonable time to yield in response to the officer's signal, the driver does any of the following:
> - Increases speed
> - Takes evasive actions
> - Refuses to stop.

And "pursuit" exists when "an officer, in an effort to keep pace with and/or immediately stop or apprehend an eluding driver, drives in a manner that is outside of normal traffic restrictions."

Officer Stevenson testified that he complied with SPD policy 13.031 because as soon as he saw Maddy elude, he disengaged, deactivated his emergency lights, and returned to "routine driving."[5]  In deposition testimony, Officer Stevenson explained that "when it became clear that [Maddy] wasn't going to stop," he "deactivated" his lights because "[p]olicy requires us to not pursue for minor offenses, which Mr. Maddy had committed, and so continuing to push it and pursue would have been violation of the department policy."

Officer Stevenson's report similarly provides that he activated his emergency lights when he intended to stop Maddy for reckless driving after Maddy exited the gas station parking lot and cut off another driver.  But when Officer Stevenson turned onto 14th Avenue NE moments later, he saw "Maddy had put over [a half] block" between them and was "accelerating and pulling away."  Officer Stevenson drove about 100 yards north on 14th Avenue NE before deactivating his emergency lights and broadcasting by radio to other officers that he was "return[ing] to routine driving" and "not in a pursuit."

Assistant Chief Mahaffey also testified that Officer Stevenson complied with SPD policy.  He explained that when Officer Stevenson has his lights on, he is "trying to effect a traffic stop" on Maddy's vehicle, and when Maddy accelerates, he is eluding.  According to Assistant Chief Mahaffey, when Officer

---

[5] At oral argument before this court, the Estate agreed that it was not alleging Officer Stevenson was negligent until the point when he deactivated his emergency lights but kept pursuing Maddy.  It stated that "in this particular set of circumstances, it is . . . the decision to continue the pursuit that . . . is the problem here."  Wash. Court of Appeals oral argument, *Harder v. City of Seattle*, No. 85812-2-I (July 16, 2024), at 2 min., 50 sec. to 3 min., 54 sec. (on file with court).  Accordingly, we consider facts only after Officer Stevenson deactivated his lights to determine breach and proximate cause.

Stevenson switched off his emergency lights and returned to routine driving, the distance grew between him and Maddy, so Officer Stevenson was not "trying to keep pace."

But the Estate submitted a declaration and expert report from retired officer Hicks, in which he states that "[a]lthough [Officer] Stevenson testified that he was merely following Maddy in an effort [to] 'keep sight of' him . . . , this language is not in substance any different from 'keeping pace' " with Maddy. He concluded that Officer Stevenson engaged in an unauthorized pursuit in violation of SPD policy 13.031.[6]

Because there is competing evidence about whether Officer Stevenson pursued Maddy in violation of SPD policy 13.031,[7] a question of fact remains as to whether Officer Stevenson breached his duty to drive his patrol car with reasonable care.

3. Proximate Cause

The Estate argues that it also raised genuine issues of fact as to whether Officer Stevenson's breach was a proximate cause of Maddy's crash. We disagree.

---

[6] The Estate also provided testimony from Captain Davisson that Officer Stevenson did not have an "articulable justification" to initiate a pursuit in violation of SPD policy 13.031(4).

[7] The Estate also argues that Officer Stevenson breached his duty by "operating 'outside of normal traffic restrictions' " in violation of SPD policy 13.031(1). Like a violation of policy, violation of a statute, ordinance, or administrative rule may be considered as evidence of negligence. *See, e.g.*, *Skeie v. Mercer Trucking Co.*, 115 Wn. App. 144, 151, 61 P.3d 1207 (2003) (defendant's failure to secure truck load to statutory standards was evidence of negligence). So, evidence that Officer Stevenson was speeding could also support breach. But because the Estate also raises an issue of fact as to whether Officer Stevenson was pursuing Maddy, we do not reach this argument.

To be liable for negligence, a plaintiff must show that a defendant's actions were a proximate cause of the plaintiff's injury. *Hartley v. State*, 103 Wn.2d 768, 777, 698 P.2d 77 (1985). Proximate cause has two elements: cause in fact and legal causation. *Id.* "[T]he cause in fact inquiry focuses on a 'but for' connection," while "legal cause is grounded in policy determinations as to how far the consequences of a defendant's acts should extend." *Meyers v. Ferndale Sch. Dist.*, 197 Wn.2d 281, 289, 481 P.3d 1084 (2021). Cause in fact, or "but for" causation, refers to the " 'physical connection between an act and an injury.' " *Martini v. Post*, 178 Wn. App. 153, 164, 313 P.3d 473 (2013) (quoting *Hartley*, 103 Wn.2d at 778). To show cause in fact, the plaintiff " 'must establish that the harm suffered would not have occurred but for an act or omission of the defendant.' " *Id.* (quoting *Joyce v. Dep't of Corr.*, 155 Wn.2d 306, 322, 119 P.3d 825 (2005)).

Cause in fact is usually a question of fact not susceptible to summary judgment. *Martini*, 178 Wn. App. at 164-65. But we may decide cause in fact as a matter of law "if the facts and inferences from them are plain and not subject to reasonable doubt or difference of opinion." *Id.* While a plaintiff need not prove cause in fact "to an absolute certainty," they must present evidence that " 'allow[s] a reasonable person to conclude that the harm more probably than not happened in such a way that the moving party should be held liable.' " *Id.* at 165[8] (quoting *Little v. Countrywood Homes, Inc.*, 132 Wn. App. 777, 781, 132

---

[8] Alteration in original.

P.3d 944 (2006)). The plaintiff cannot rest their claim on a speculative theory. *Id.*

The Estate argues that there are issues of fact as to "whether Maddy perceived that [Officer] Stevenson was pursuing him" after the officer deactivated his emergency lights. But the evidence shows otherwise.

Using Rose's animated reconstruction video of Maddy and Officer Stevenson's route up to the time of the collision, the City's expert Dr. Arndt analyzed the dynamics of the situation, including visual obstructions, environmental obstructions, sightlines, and Maddy's position in the car, to determine whether Maddy could have seen Officer Stevenson following him. From his analysis, Dr. Arndt determined that "Maddy would have had the ability to see Officer Stevenson's vehicle lights activated for a total of approximately 5 seconds" as he traveled north on 14th Avenue NE. Dr. Arndt explained that once Maddy turned onto NE 127th Street, he had "no opportunity to see the activated lights,"[9] which was "approximately 34 seconds prior to the collision." He also explained that between the last point when Maddy could have seen Officer Stevenson's emergency lights on 14th Avenue NE and the point of the collision,

> it is likely that there would only be two short opportunities for Mr. Maddy to even have the ability to have an unobstructed line of sight to Officer Stevenson's vehicle. The likely total time for viewing would be approximately 3 seconds, and at each occurrence it

_____

[9] Officer Stevenson turned off his emergency lights after driving about 100 yards north on 14th Avenue NE.

would require Mr. Maddy to be looking back as he was navigating a corner.

Dr. Arndt also created a demonstrative that showed Maddy's possible sight lines of Officer Stevenson.

Based on Rose's and Dr. Arndt's demonstratives, accident reconstructionist Dr. Bauer concluded that there were four moments when Maddy could have seen Officer Stevenson following him: (1) when Officer Stevenson first turned onto 14th Avenue NE, (2) the next two seconds before Maddy turned onto NE 127th Street, (3) a split second when Officer Stevenson turned onto NE 127th Street as Maddy was turning onto 12th Avenue NE, and (4) a split second just before Maddy turned onto NE 130th Street as Officer Stevenson turned onto 12th Avenue NE.

The Estate offers no affirmative evidence that Maddy saw Officer Stevenson. Still, it argues the possibility that Maddy could have seen Officer Stevenson, coupled with his erratic driving, show that he was eluding Officer Stevenson's continued pursuit. But Maddy testified to the contrary. Maddy repeatedly said that he did not see Officer Stevenson following him. During his arrest, officers asked Maddy three times if he saw Officer Stevenson trying to make the traffic stop. Each time he said, "No," "I didn't even see him," and, "No, I did not." Then again in his deposition, Maddy said that his driving was not influenced by police following him. He testified that he did not see Officer Stevenson at all. And he reaffirmed the statements he made at the time of his

arrest, saying they were truthful. Even on cross-examination by the Estate's attorney, after watching Rose's animated reconstruction video, Maddy acknowledged that the exhibit showed he could have seen Officer Stevenson but maintained that he did not. He testified again that he "never [saw] any police vehicles."

The Estate argues that Maddy's testimony is "highly questionable and impeachable" because he admitted to using heroin just before the incident. But to avoid summary judgment, the nonmoving party must present contradictory evidence or otherwise impeach the evidence of the moving party. *Dunlap v. Wayne*, 105 Wn.2d 529, 536, 716 P.2d 842 (1986). While Maddy acknowledged that he used heroin on May 20, 2020, that he was driving erratically, and that the events leading up to the collision were "a blur," he consistently and adamantly testified that he did not see Officer Stevenson. That Maddy is "impeachable" does not amount to affirmative evidence sufficient to defeat summary judgment. As a result, the Estate fails to show that "but for" Officer Stevenson's pursuit, Maddy would not have driven erratically and killed David.[10]

---

[10] Because the Estate cannot show the City was a cause in fact of David's death, we do not reach the issue of legal causation.

Because the Estate cannot show Officer Stevenson was a proximate cause of David's death, we affirm the trial court's dismissal of its claims against the City on summary judgment.

Brennan, J

WE CONCUR: